* FAIRCLOTH, J., being a stockholder in defendant company, did not sit on the hearing of this case.
The demand of the plaintiffs in the original action was that certain bonds issued by defendant company, some of which are held by the other defendants, John L. Morehead and Julius A. Gray, should be (290) declared void; and that the officers of the company be restrained from paying interest on said bonds. An injunction was accordingly granted, which the defendants by this motion seek to dissolve. The case is fully stated by Mr. Justice Rodman in delivering the opinion of this Court. His Honor allowed the motion, and the plaintiffs appealed.
The plaintiffs are stockholders in the Atlantic and North Carolina Railroad Company. On 1 January, 1868, the company made *Page 217 
400 bonds of $500 each, with coupons attached for interest at the rate of 8 per cent per annum, payable semiannually. The principal was due and payable on 1 January, 1888. The bonds and coupons were made payable in the city of New York, and recited that they were secured by a mortgage on the railroad and were issued by authority of an act of Assembly passed at the session of 1854-55. Shortly thereafter, before the bonds were issued, the company made a mortgage or deed in trust of all of its property to certain trustees to secure the payment of said bonds. The plaintiffs say that the company delivered to the defendants John L. Morehead and Julius Gray bonds of the par value of $100,000 in payment of a debt from the company to them of $76,899.13, and that the company sold the rest of the bonds at the rate of $80 for $100 of the bonds.
The plaintiffs say that said bonds were not authorized by the act referred to, and were void, and that those issued to Morehead and Gray were usurious; that the company has regularly paid to those defendants the specified interest upon the bonds delivered to them up to the date (not stated, but we suppose up to 1 January, 1877), and that (291) the excess over the legal interest so paid ought to be credited as a payment on the principal of those bonds. They further charge that the company is about to pay a further sum by way of interest on those bonds, and they ask that the company be restrained from such payment and that the bonds be declared void.
Upon this complaint, Seymour, J., ordered an injunction as prayed for.
The defendants Morehead and Gray filed a joint answer, and thereupon moved before Moore, J., at Spring Term, 1877, of Craven Superior Court, to dissolve the injunction so far as it prohibited payment to them, and the judge granted their motion and dissolved the injunction. From this judgment the plaintiffs appealed.
The defendants in the answer admit the facts alleged by the plaintiffs, except those touching the acquisition of bonds of the company by them. As to this (in article 2) they say that Morehead is the owner of twenty-five and Gray of thirty-three of the bonds of the company, which they purchased before maturity for value and without notice of any defect or irregularity. In the next article they say that as administrators of John M. Morehead, who died in 1866, they recovered one or more judgments against the company for work done by their intestate under a contract with the company in the construction of its road, and upon these judgments they levied execution on the property of the company, and were proceeding to sell it when the company paid to them in New York 188 of its bonds aforesaid, of the par value of $94,000, which they accepted in satisfaction and discharge of said debts. They do not state with precision *Page 218 
what was the amount of the indebtedness of the company to them when the bonds were delivered in discharge of it, nor even when the bonds were delivered. It may be inferred, however, from what they say, that they took the 188 bonds at or about 80 cents on their face (292) value. Neither is it clear whether or not the 58 bonds which in article 2 they say they bought for value are a part of the 188 bonds which they received as administrators. It will not prejudice them in the present stage of the case if we assume that they were. If a pleading is ambiguous, it must be taken most strongly against the pleader. And if the fact should be otherwise, they can amend their answer by stating distinctly when and for what consideration they respectively purchased those 58 bonds.
In the present stage of the case we assume the facts set forth in the answer as true.
The question before us is whether the injunction as respects the defendants Morehead and Gray was rightly dissolved or should have been continued until the hearing. Our opinion is confined to that precise question, and does not extend to holders of any of the bonds of the company other than those which were delivered to the defendants as administrators of John M. Morehead and in discharge of the indebtedness of the company to him.
1. The bonds are not void by reason of a want of power in the company to issue them. A railroad corporation must have power to contract debts, and every corporation which has that power must also have power to acknowledge its indebtedness under its corporate seal, that is, to make its bonds. It is immaterial whether the company had power to make its bonds by virtue of its general corporate powers, or of Laws 1854-55, ch. 232. We think that for a proper purpose it had it under both.
2. The much more serious question is, whether the bonds made to the administrators of John M. Morehead under the circumstances were usurious.
In the absence of special legislation, corporations are embraced in the usury law just as natural persons are, and we know of no special (293) legislation affecting this case in this respect.
Usury may be defined to be the taking, or stipulating for, more than the legal rate of interest for the loan or forbearance of money with intent to violate or evade the law. 2 Parsons Notes and Bills, 400.
The act respecting usury which was in force in North Carolina on 1 January, 1868, at or about which date we may assume that the bonds in question were delivered, was Laws 1866, ch. 24 (Bat. Rev., ch. 114). That act says that the legal rate of interest shall be 6 per cent per annum for such time as interest may accrue, and no more: Provided, that any person may for the loan of money, but upon no other account, take *Page 219 
interest at a rate so great as 8 per cent, if both the consideration and rate of interest shall be set forth in an obligation signed, etc. And if any person shall agree to take a greater rate of interest than 6 per cent per annum where no rate of interest is named in the obligation, or a greater rate than 8 per cent where the rate is named, the interest shall not be recoverable at law, etc.
In Coble v. Shoffner, 75 N.C. 42, this act received a construction, and it was held that upon a bond not expressed to be for a loan of money, but in which 8 per cent is reserved, the obligee is entitled to recover at the rate of 6 per cent only.
In the present case the bonds were not given upon a loan of money, but for the forbearance of a precedent debt. It was usury, therefore, to agree to take a greater interest than at the rate of 6 per cent upon the sum forborne, and no greater rate can be collected.
The usury which the company agreed to pay consisted not alone in the excess of 8 per cent over 6 per cent on the actual debt, but also in the difference between the actual debt (which we may assume for the present purpose to have been $77,000) and the $94,000 in bonds given for its forbearance, being $17,000, for which no consideration was paid except the forbearance, and, also, the whole interest on this (294) $17,000 of bonds.
Our conclusion that the contract was usurious supposes that the law of North Carolina governs it.
3. It is said, however, for the defendants that these bonds were delivered in New York, and are made payable there, and that consequently they are governed by the law of New York in respect to the rate of interest which they may legally be made to bear, and we are referred to a statute of New York by which corporations are forbidden to plead usury as a defense. It will be admitted that the statutes of the State can have no extraterritorial operation. The act cited cannot and does not profess to control corporations other than those created by the law of New York; or if it be regarded as an act regulating the practice of the courts of New York, it might perhaps apply to corporations created by a foreign State when sued in the courts of that State. It cannot govern a corporation of this State sued in this State. R. R. v. Bank, 12 Wall., 226, was cited as establishing a different view, but on examination it will be found not to do so. The plaintiff corporation in that case was authorized to receive, and the defendant corporation to pay, more than the ordinary rate of interest by the laws of their respective States.
It is admitted that a debtor living in one State may give to a creditor in another State a bond or note bearing such rate of interest as is legal in either; and if no rate of interest be expressed in the note, the rate in use at the place of payment will be presumed to have been intended. (2 *Page 220 
Parsons Bills and Notes, 376.) But in the present case the bonds expressed a rate of interest not legal in North Carolina as to such bonds, and not legal in New York, except by virtue of the rule of pleading established by the act of 6 April, 1850, which, as we have said, was confined to New York corporations, or to courts in New York. (295) These bonds were clearly a North Carolina contract; the precedent debt which was the consideration was incurred and payable in North Carolina; both parties resided in North Carolina, and the bonds were secured by a mortgage on real property in North Carolina, which could only be enforced through the courts of this State. In our opinion, the bonds could legally bear no greater rate of interest than that allowed in North Carolina.
4. It is also contended for defendants that the bonds in question should not be regarded as having been taken in payment of the precedent debt, but as having been sold to them, and the case from 12 Wallace, supra, is cited in support of this view. In that case the Junction Railroad Company was authorized by statute to borrow money, or to sell its bonds at any rate of interest; and it was held that whether the transaction there in question was a loan of money on the security of the bonds, or a sale of the bonds, was a question of fact, and as such it was held to have been a sale. In our case, however, there was a precedent debt which the company was authorized by its general powers and by Laws 1854-55, ch. 232, page 298, to borrow money to pay. But there is no special authority given to the company to sell its bonds, beyond what belongs to all persons; and it seems to be settled that a natural person cannot legally sell his bonds bearing the highest legal interest at a discount as a means of borrowing money, and that such a sale is in substance a loan and is usurious.
It results from the above that in our opinion the agreement of the company to pay interest beyond 6 per cent on the actual sum forborne, which was the debt to the intestate of the defendants at the date when the bonds were delivered to them, was illegal as to excess, whether such excess was put in the shape of bonds beyond the principal debt or in that of an excess of interest on the amount of bonds which represented the real debt. For the company to continue to pay such an excess (296) of interest is an injury to the stockholders which they are entitled to have enjoined.
5. Whether the plaintiffs are entitled to have the bonds given by the company in excess of the real debt to the intestate of the defendants canceled and the illegal excess of interest heretofore paid returned to it, or credited on the principal, or future accruing interest on the bonds, are questions not presented in this stage of the case, and which it would be premature to decide. These will properly arise when the case comes on *Page 221 
for a final hearing, and connected with them will be the question how far the statute of limitations will bar a recovery by the company.
Judgment below reversed, and the injunction against the payment of any further interest on the bonds in the hands of the defendants is continued to the hearing.
PER CURIAM. Judgment accordingly.
Cited: Comrs. v. R. R., post, 297, 299; Webb v. Bishop, 101 N.C. 102;Meroney v. Loan Assn., 116 N.C. 895.
(297)