————o————

ANDREW ALDERTON v. ANDREW J. WRIGHT.

*Contract for services—Submission to jury—Evidence.*

1. Plaintiff sued defendant to recover for the labor of himself and wife. He testified to an arrangement under which he took charge of defendant's farm, living in his house with him, and working on the farm, while his wife did the work in the house. He was to receive the same wages as the other men,

and his wife was to be paid for the housekeeping. The defendant denied any such arrangement, and testified that plaintiff came to him and said that he was about to be married, and that defendant told him, if he was going to marry a "smartish" girl, she could come to defendant's house, and do his and plaintiff's work, and that plaintiff could work on his own farm. And it is held that, if plaintiff's story of the agreement was correct, he was entitled to recover, but, if defendant's version of the talk was the true one, he was entitled to a verdict as against plaintiff's claim for the work and labor of himself and wife.

2. In such a case testimony showing a large increase in the acreage of cleared land on the farm during the time plaintiff lived there is incompetent, unless it is shown what part of the clearing was done by the plaintiff; nor is it competent to show the financial condition of plaintiff and his wife when they went to defendant's to live, and when they left there.

Error to Sanilac. (Beach, J.) Argued May 15, 1890. Decided June 6, 1890.

*Assumpsit.* Defendant brings error. Reversed. The facts are stated in the opinion.

*John Divine* (*E. F. Bacon,* of counsel), for appellant.

*W. H. Burgess,* for plaintiff.

MORSE, J. The plaintiff sued in *assumpsit* for the labor of himself and wife.

He claimed that in 1876 he made an arrangement with the defendant, who is his uncle, to take charge of his farm, and that he and his present wife, whom at that time he was about to marry, should live on the uncle's place; that the defendant agreed to pay him, as a laborer on the farm, the same wages that other men received, and also to pay his wife for housekeeping. The amount of his wife's wages was not fixed. Plaintiff claimed that December 2, 1876, he and his wife moved into defendant's house with him, and commenced work; that they remained there until May, 1881; that he worked mainly

for defendant until the spring of 1879; after that, he worked principally on a farm of his own, but did some labor for defendant. He and his wife kept an account of their labor in a memorandum book.

The defendant denied any agreement to employ plaintiff or his wife. He says that in 1876 the plaintiff said to him: "Uncle, I am going to get married;" that defendant told him:

"Well, Andrew, if you are going to get married, and are going to marry any kind of a smartish girl, you can fetch her to my house, and she can do my work and do your work, and you can work on your own farm."

That this was all the talk or agreement there was about the. matter until defendant was called upon for a settlement, in 1886; that plaintiff did chores the first year he was there, and in the winters of 1877 and 1878, and may have milked some in the summer before defendant was out of bed; that defendant furnished the provisions for the table while plaintiff and his wife were there, and boarded a good many men who were working for plaintiff on plaintiff's place.

Plaintiff had judgment upon verdict for $500.

Plaintiff was asked upon direct examination:

"When you went to the defendant's to work, how much clearing was there on his farm?" and "How much clearing was there on the farm when you went away?"

Under objection, he answered that there were 40 or 45 acres cleared when he went there, and about 120 cleared when he went away. This testimony would have been competent had it been shown that plaintiff did all the clearing, or what amount of it, as tending to show the amount of labor performed by him; but nothing of this kind was attempted. The bare fact of the amount cleared while plaintiff was there was put in evidence, and no showing was made by either side of how much of it was

done by plaintiff. Standing alone, the testimony was not relevant or material to the issue.

Testimony was also admitted of the financial condition of the plaintiff and his wife when they went to defendant's, and when they left there. This was error. The plaintiff's counsel claims that he was entitled to this evidence to rebut the opening of defendant's counsel to the jury, who told them in such opening, which was made before any evidence was introduced on either side, that plaintiff had a home at defendant's, and his living there, and had used the opportunity in accumulating property, and in improving his farm and financial circumstances. We find nothing in the record to support this claim, and we cannot go outside of the bill of exceptions even to save error.

The plaintiff, on cross-examination, was asked if he did not have a talk with one George Nisely, in 1886, in relation to defendant, and if Nisely did not say to him:

"Why didn't you do as I did when I left the old man, —settle up with him?"

Plaintiff admitted having a talk, but denied that Nisely said this to him. He was further asked:

"Q. And didn't you say you had reasons for waiting, or words to that effect?
"A. No, sir.
"Q. Then you mean to tell this jury that there was no such conversation passed between you?
"A. There was no such conversation passed between us at that time, sir."

On redirect examination, plaintiff was permitted, against objection, to testify what the conversation between him and Nisely was at the time inquired of as above. There was no error in this. By the cross-examination the inference was sought that something hurtful to plaintiff's case had passed between him and Nisely. It was proper enough

that he should give to the jury, under the circumstances,. all that occurred between him and Nisely at that interview.

The circuit judge erred in his submission of the case to the jury. If the defendant's version was true, there was no express contract that plaintiff and his wife should be paid for their work, and the court correctly held that there could not be an implied agreement under the circumstances. But he instructed the jury as follows:

"Now, Mr. Wright's statement of the talk is this:

"'Mr. Alderton came to my house. There was going to be a vacancy by a family in there, I think some time the last days of September, or it might have been the 1st of October, and Mr. Alderton came to me, and he says, " Uncle, I am going home to Canada to get married;" and I stood for a moment at that, and I says: "Well, Andrew, if you are going to get married, and you are going to marry any kind of a smartish woman, you can fetch her to my house, and she can do my work, and do your work, and you can work on your own farm." He says, "I ought to know how smart she is, for we were raised children together." That was our contract. No more was said.'

"That, gentlemen of the jury, is the statement of what their talk was preceding his going there, and the talk under which they went there. If you find that Wright's. version of the talk is correct, and that Alderton's is wrong as to what the talk was, then it will be your duty, solely, to say what that talk meant, taking into consideration the relations and the circumstances of the parties, and the facts under the evidence. Defendant says it meant no pay, but simply an arrangement for their mutual benefit. The plaintiff claims that the language as given by Mr. Wright, if Wright was correct about it, was a request. to work, with the understanding that the work was to be paid for; that Wright so intended, and he so understood the talk. It is for you to say what the talk was, and what it meant; what was the intent, and what the parties understood."

And further to the effect that, if they found that defendant meant by this talk that plaintiff and his wife should have pay, and plaintiff so understood it, they

would then be authorized to find a verdict for plaintiff for what the work was worth. This was wrong. If plaintiff's story of the agreement was correct, he was entitled to recover; if defendant's version of the talk was found to be the true one, he was entitled to a verdict as against plaintiff's claim for the work and labor of himself and wife.

The judgment must be reversed, and a new trial granted, with costs of this Court to defendant.

The other Justices concurred.