MACKINNON v. AUDITOR GENERAL.

1. TAXES—TITLE BY CERTIFICATE—ASSESSMENT.
    Where a person has paid to the government the full purchase price of lands, and obtained a certificate, but not a patent, thereof, and the land is assessed for several years as real estate, instead of personal property, as required by the tax law of 1882, and it does not appear that he applied to the board of review to have it assessed as personal property, or paid any greater tax than he should have paid, *mandamus* will not lie to compel the auditor general to cancel tax sales of said lands and refund the taxes paid.

2. MANDAMUS—WHEN LIES.
    *Mandamus* is a discretionary writ, and will not issue unless it be made to appear that justice requires it.

*Mandamus* by Donald C. MacKinnon to compel Perry F. Powers, auditor general, to cancel certain tax sales, and to refund the amount paid thereon. Submitted April 8, 1902. (Calendar No. 19,189.) Writ denied May 19, 1902.

*Fred H. Abbott*, for relator.

*Horace M. Oren*, Attorney General ( *Charles W. Mc-Gill*, of counsel ), for respondent.

Moore, J.   The following statement of facts, taken from the brief of the attorney general, does not materially differ from that contained in the brief of counsel for relator:

At the county treasurer's sale in October, 1886, relator purchased lot 1 of block 5 and lot 7 of block 4 of the recorded plat of the village of Iron River for the taxes of 1883 and 1884.   He purchased the same lands at the auditor general's office in August, 1888, for the taxes of 1885, and at the county treasurer's sale in October, 1888, for the taxes of 1886, and in May, 1890, for the taxes of 1887.

It appears that in 1878 relator located 80 acres of land with certain scrip issued by virtue of a decree rendered on the 16th day of December, 1873, by the Supreme Court of the United States, in section 26, in township 43 N., range 35 W., and received a certificate in full satisfaction thereof under date of August 1, 1878.   In the same year Alexander MacKinnon located 160 acres of land under certain scrip issued by virtue of a decree of the Supreme Court of the United States rendered on the 28th day of January, 1878, in section 26, township 43 N., range 35 W., and received a certificate in full satisfaction thereof.   In May, 1880, the relator executed to Alexander MacKinnon a quitclaim deed purporting to convey to him an undivided one-half of the 80 acres located by relator, and Alexander MacKinnon at the same time executed and delivered to relator a quitclaim deed which purported to convey to the relator an undivided one-half of the lands which had been so located and entered by Alexander MacKinnon; which deeds were duly recorded in the office of the register of deeds of the county in which the lands were located.   In 1881 Alexander MacKinnon and the relator executed and recorded in manner and form as required by law a town plat embracing the lands so located and entered by them, which plat was named and

is known as the "Plat of the Village of Iron River," and of which said lot 1 of block 5 and lot 7 of block 4 of the recorded plat of the village of Iron River is a part.

Relator alleges that, after the relator and Alexander McKinnon located the lands in question, their right to locate said lands with said scrip was duly contested before the commissioner of the general land office at Washington, and an appeal from the decision of said commissioner was taken to the secretary of the interior; but in this case the fact of such contest is immaterial, because the final decision rendered by the secretary of the interior fully sustained the right of relator and Alexander MacKinnon to locate the lands with the scrip. It also appears that, where lands were located with the aforesaid mentioned scrip, it was thought the laws of the United States made no provision for issuing a patent to the persons locating such lands thereunder, and patents for the lands were not issued until sometime in the year 1895, Congress having passed an act of May 30, 1894, authorizing the issuing of such patents.

By virtue of the above-mentioned quitclaim deeds the relator and Alexander MacKinnon became the joint owners of the lands located by them as aforesaid, and exercised absolute ownership over them, and executed and recorded said plat of the village of Iron River, and were exercising such ownership at the time the said lots were assessed for the taxes of 1883, 1884, 1885, 1886, and 1887; and it does not appear but that the said relator is still the owner of an undivided one-half of said lots as such ownership existed at the time of his said purchases for the taxes in question. On the theory that said lands were not subject to taxation for the years in question as real estate, and that as such purchaser relator is entitled to a cancellation of said sales by the auditor general, and a refunding of the amount paid, together with the interest thereon, a writ of *mandamus* is prayed for.

The respondent denies that the relator is entitled to the relief prayed for. The relator bases his right to relief solely upon the theory that the lands in question were not

subject to taxation as real property. His counsel concedes that the interest in said lands which the MacKinnons held jointly was subject to taxation as personal property under section 2 of the tax law of 1882, but that it could not be taxed as real estate, and therefore relator is entitled to have his money refunded.

A great many questions are raised which we do not deem it necessary to discuss. When the relator and Alexander MacKinnon located these lands, they paid for them in full, and obtained the full equitable title. Nothing stood in the way of their having legal title, except the mere issuance of a patent, which, when issued, would relate back to the time when they obtained their certificates. They entered into possession of these lands, and treated them as though they were the absolute owners of them. They platted them, and recorded their plat. It is impossible to read this record without concluding that not only the assessing officers, but the relator and Alexander Mac-Kinnon, supposed the interest the MacKinnons had in the lands was property assessable as real estate. Their interest was no more real or valuable whether it was called real estate or personal property. Had it been assessed as personal property, if the assessor had done his duty, it would have been assessed at the same amount for which it was assessed as real estate. The MacKinnons being the owners of this property, it was their duty to pay taxes upon it. The law provides for a board of review, before whom the property owner may appear, if he desires, and ask for a change in his assessment. Section 18 of the tax law of 1882 provides, among other things, as follows:

"They shall correct all errors in the names of persons and the descriptions of property upon such roll, and in the assessment and valuation of property thereon, and they shall cause to be done whatever else may be necessary to make said roll comply with the provisions of this act." Act No. 9, Pub. Acts 1882.

Practically the same provisions are found in all of the later tax laws. If the MacKinnons had appeared before

this board of review, and suggested their assessment should be changed from a real-estate assessment to a personal-property assessment, is there any doubt as to the power of the board to act? It is not made to appear they did this. Because the property was not assessed as personal property, but was assessed as real estate, it is now, after the lapse of many years, sought to avoid the payment of any taxes thereon, and to have the money refunded for taxes which the relator at one time thought ought to be paid. This claim does not appeal to our sense of justice, nor accord with our idea of the duty the property owner owes to the State, which makes his person and property secure. It has been held many times in this court that the issuance of the writ of *mandamus* is not a matter of right, but is a matter of discretion. Before it should issue, it should be made to appear that justice requires its issuance. *Tennant* v. *Crocker*, 85 Mich. 328 (48 N. W. 577), *Van Akin* v. *Dunn*, 117 Mich. 421 (75 N. W. 938).

The writ is denied, with costs.

HOOKER, C. J., GRANT and MONTGOMERY, JJ., concurred. LONG, J., did not sit.