GEORGE N. FLETCHER & SONS *v*. ALPENA CIRCUIT JUDGE.

136    511|
150    ¹205

136    511
f155   ⁵644

136    511
157    ⁶ 35
157    ⁶⁶18

1. MANDAMUS—RETURN—CONCLUSIVENESS.
    Where no issue is joined in *mandamus* proceedings, the answer
    of respondent is conclusive as to the facts.

2. CORPORATIONS—USURIOUS CONTRACTS—BONDS.
    The issue of 6 per cent. bonds by a corporation, to be sold at 75
    cents on the dollar, is usurious.

3. SAME—ULTRA VIRES—DEFENSES—WAIVER.
    A usurious contract entered into by a corporation is not *ultra
    vires*, in the ordinary sense of the term, as 2 Comp. Laws, §
    4857, expressly declares such contracts not to be void, and
    they are good in the hands of *bona fide* holders, and good as
    to all the world except the debtor, who may waive his right
    to treat them otherwise by neglecting to plead usury.

4. SAME—INJUNCTION—RIGHTS OF STOCKHOLDERS.
    A stockholder in a corporation may enjoin it from making a
    usurious contract, where it is not inequitable for him to do so
    as between himself and other stockholders, and where he will
    suffer injury from the transaction; but it cannot be said that
    he is entitled to such relief under any and all circumstances.

5. MANDAMUS—PRACTICE.
    *Mandamus* is a discretionary writ, and should not issue when it
    will work an injustice.

6. SAME—INJUNCTION—DISCRETION OF CIRCUIT JUDGE.
    The discretion of a circuit judge in refusing to continue an in-
    junction will not be interfered with by *mandamus* unless re-
    lator has a clear legal right to the relief sought, or such dis-
    cretion is otherwise clearly abused.

7. SAME—CORPORATIONS—USURIOUS CONTRACTS.
    *Mandamus* will not issue at the instance of a stockholder of a
    corporation to compel the circuit judge to continue a pre-
    liminary injunction restraining the corporation from making
    a usurious contract, without regard to the equitable consider-
    ations which induced the denial of such relief. So *held* where
    a corporation, under the stress of necessity, and supported by
    a vote of a majority of the stockholders, was about to issue its
    bonds, and sell them so far below par as to make the interest
    payable exceed 7 per cent. GRANT and CARPENTER, JJ., dis-

senting, on the ground that the minority stockholders had no other remedy, and being of opinion that it was an abuse of discretion not to retain the injunction until the hearing.

*Mandamus* by George N. Fletcher & Sons to compel Frank Emerick, circuit judge of Alpena county, to continue an injunction restraining the sale of certain bonds. Submitted February 2, 1904. (Calendar No. 20,355.) Writ denied May 17, 1904.

*Charles R. Henry* (*Russel & Campbell*, of counsel), for relator.

*Joseph H. Cobb*, for respondent.

HOOKER, J. The relator is a stockholder in a corporation named the Alpena Portland Cement Company. A bill of complaint was filed by it, in which it was sought to restrain the sale of certain bonds by said cement company, and a preliminary injunction was issued as prayed. An application to dissolve this injunction was heard, and the court rendered an opinion in which the facts found by him were stated, and an order made continuing but so modifying the injunction that the defendants might sell the bonds (which draw 6 per cent. interest) at a price not below 75 cents on the dollar. Thereupon this application was made for a *mandamus* to compel a continuance of the injunction as originally made.

In accordance with our uniform practice where no issue is joined, we must take the answer of the circuit judge as conclusive of the facts. From this we may say, in brief, that the Alpena Portland Cement Company found it necessary to change its machinery, so as to make its product by an improved method, in order to compete with others, and let contracts for such machinery to a large amount. Having no means to meet its obligations, it decided to issue the bonds of the company bearing 6 per cent. interest, and to sell them below par. Counsel for relator insist that such action would conflict with the usury law.

We think that such an issue and sale of bonds would be usurious, and, in the absence of a statute forbidding it, the defense of usury might be successfully made by the corporation against a plaintiff who should be shown not to be a *bona fide* holder. But such a contract is not void, and usually such defense can be made only by the debtor, or possibly one in privity with him. 2 Comp. Laws, § 4857, and cases cited.

If it be conceded that the relator's claim, that the threatened transaction would be usurious if consummated, is correct, we must nevertheless refuse to interfere with the discretion of the circuit judge, unless we must say, from his finding of facts, and the law applicable to the case, that the relator has a clear legal right to this relief, regardless of any equitable considerations, or, as counsel seem to argue, an absolute right to prevent the corporation from making a usurious contract.

We cannot hold that this contract is *"ultra vires,"* in the ordinary sense of the term, for, while illegal contracts generally might be, it is everywhere settled that usurious contracts are good in the hands of *bona fide* holders, and, as we have seen, our statute not only does not make them criminal, but it does not in terms prohibit them, and expressly declares them not to be void; and they are good as to all of the world, except the debtor, and he may waive his right to treat them otherwise by neglecting to plead usury.

We are of the opinion that a stockholder may enjoin the making of a usurious contract where it is not inequitable for him to do so as between himself and other stockholders, and when he will suffer injury from the transaction. See 10 Cyc. p. 968, subd. 9. The claim is made in this case that great injury will result to the corporation, and consequently to other stockholders, if it be not permitted to proceed with the sale of its bonds, to provide money with which to pay its obligations, a failure to do which means bankruptcy, and it is further stated that

complainant's opposition is based upon a design to embarrass the corporation, and acquire its property at a nominal price through a foreclosure of a prior mortgage, of the bonds secured by which complainant is a large holder. It is clear that such action, if taken, would absorb the interest of other stockholders. Whether or not there is a foundation for such a charge, or for the counter-charge which complainant's counsel make, we cannot consider, except as it may appear from the finding of fact; and from this, and the record in the case, we must admit the possibility of such a situation as the defendants allege.

We have often held that *mandamus* is a discretionary writ, and should not issue when it would work an injustice. *Van Akin* v. *Dunn*, 117 Mich. 423 (75 N. W. 938); *Tennant* v. *Crocker*, 85 Mich. 328 (48 N. W. 577); *Pistorius* v. *Stempel*, 81 Mich. 133 (45 N. W. 968); *Baker* v. *Board of State Canvassers*, 111 Mich. 380 (69 N. W. 656); *MacKinnon* v. *Auditor General*, 130 Mich. 554 (90 N. W. 329). This rule is as applicable to the circuit court as to this court. The complainant invokes the equitable remedy by injunction. Ordinarily this court will not review the exercise of the judicial discretion of the chancellor, and it is only when the issue or denial of an injunction violates a clear legal right, or is a clear *abuse* of discretion, that this court will interfere. That cannot be said in this case unless we can say that the stockholder is entitled to enjoin a usurious contract, under any or all circumstances, as a matter of law. This we cannot say. See *Gamble* v. *Water Co.*, 123 N. Y. 108 (25 N. E. 201, 9 L. R. A. 527); *Handley* v. *Stutz*, 139 U. S. 417 (11 Sup. Ct. 530). See, also, 10 Cyc. p. 968, subd. 9, and p. 970, subd. 14*b*.

The writ is denied.

MOORE, C. J., and MONTGOMERY, J., concurred with HOOKER, J.

GRANT, J. (*dissenting in part*). I concur with my Brother HOOKER that the proposed issue and sale of the

bonds in this case is usurious. The defendants in the chancery suit admit that they proposed to sell the bonds at auction for what they would bring. The court, in its order upon the hearing to dissolve the temporary injunction, authorized a sale at not less than 75 cents on the dollar, thus sanctioning a rate of interest of about 31 per cent. It needs no argument to demonstrate the usurious character of the transaction. It is said in *Schermerhorn* v. *Talman,* 14 N. Y. 93, 117, " It would seem hardly to require either authority or argument to prove that a person cannot sell his own promises to pay;" and it is held that this applies to corporations as well as to individuals. It is also said in *Farmers' Loan & Trust Co.* v. *Carroll,* 5 Barb. 616:

" I hold it to be law that in all cases of a loan, where it appears upon the face of the transaction that the lender is *in any manner* to receive more than the legal rate of interest as a compensation for forbearance upon the thing loaned, it is usury *per se.*"

This rule applies to corporations. *Commissioners of Craven* v. *Railroad Co.,* 77 N. C. 289.

18,525 shares of the capital stock of this corporation voted against the issue of the bonds, and 31,105 for it. As my Brother HOOKER has said, the defense of usury is one which the debtor may or may not interpose. In the case of a corporation, the corporation in its entity is the defendant in the suit. Stockholders are not parties, and cannot interfere except by suit in equity. The bonds might be purchased by the directors themselves. Upon suit thereon this defense of usury could not be interposed against a *bona fide* holder. Undoubtedly, the majority in control of this corporation would not interpose such a defense. Therefore the minority stockholders are powerless and remediless if the issue and sale be accomplished.

The sole question, therefore, is, May these minority stockholders enjoin the transaction, and thus avail themselves of the only remedy they have ? If the order of the circuit judge stands, the question is permanently disposed

of. There will be no occasion for a hearing upon the merits, because the bonds will before that time have been issued under the sanction of the court. As I view it, the question is not one of discretion. The sole ground for refusing the relief is that of necessity, to wit, that the corporation cannot raise money by any other method. This is based upon the conclusion reached by the learned circuit judge that the capital stock of this corporation, to wit, $500,000, has all been paid in and is nonassessable. The circuit judge must mean nothing more than that the stock is issued as fully paid and nonassessable. Both the bill and answer recognize the fact that the stock has not been fully paid, unless payment in "water," rather than in money or its equivalent, is to be regarded as payment. It is asserted in the bill of complaint that the actual amount paid by each stockholder on his subscription is only $37\frac{1}{2}$ cents on the dollar. The answer does not deny this. It alleges that the marl and clay lands were put into the corporation at a value of $150,000, but were in fact paid for by the issue of only $60,000 fully paid stock of the corporation. The answer asserts that "the stockholders [aside from the former owners of the lands] were to pay in full for said stock $62\frac{1}{2}$ cents on the dollar for the remainder of the stock." It also asserts that, under an arrangement with the relators and others, said stock "was declared fully paid up and nonassessable for the amount they had already paid upon the stock, to wit, the sum of $37\frac{1}{2}$ per cent." As against creditors, this stock is not fully paid. Relators assert in their bill of complaint that it is assessable, and that the requisite funds can be raised by assessment. Whether the stockholders, as between themselves, are estopped, we need not determine.

Charges and counter-charges are made against the respective parties by the bill and answer. Counsel for the defendants in the chancery suit states in his brief that he desires to treat this as a final hearing, and for that purpose has sent to this court—not under the certificate of the judge—a portion of the testimony taken before him at the

hearing on the preliminary injunction. This testimony has not been considered by us. The merits must abide the hearing. The sole question presented is, Should the preliminary injunction be maintained until the hearing? The judge does not find that the relators (complainants in the chancery suit) come into court with unclean hands. He bases his conclusion and order, as above stated, solely upon the ground of necessity. The question, therefore, is, Can a majority of the stockholders of a corporation issue bonds and dispose of them at a usurious rate of interest against the remonstrance of the minority? If, as in this case, under the plea of necessity resulting from the insolvency of the corporation, the majority can issue notes or bonds of the corporation at 31 per cent. interest, they can issue them at 50 per cent., or any other sum commensurate with the supposed necessity of the corporation to obtain a given amount of money. In other words, if a corporation needs $10,000, and the majority of the stockholders think that with that $10,000 they can make the corporation a success, they may issue bonds or notes for $100,000 to secure the $10,000. To me this is a startling proposition. A more effectual way to "freeze out" a minority of the stock is inconceivable. If two of three partners of an insolvent partnership determine, on the ground of necessity, that if they had $10,000 they could make the partnership business a success, and could find some one who would let them have the $10,000 upon the delivery of a note or bond and mortgage for $20,000, would not equity, at the instance of the third partner, restrain the action of the majority on account of the usurious nature of the contract? There is no difference in principle between such action on the part of a partnership and the majority of the stockholders of a corporation. The injury to the minority stockholder differs only in degree from that of the partner. The minority stockholder must pay his proportionate share of the usurious interest. It requires no argument to show that he is injured. When thus injured, and he comes into court with clean hands,

he is entitled to the strong hand of equity to restrain the oppressive action of the majority.

In *Commissioners of Craven* v. *Railroad Co.*, 77 N. C. 289, stockholders (how many does not appear) filed a bill to restrain the carrying out of a usurious contract, and their right to do so was sustained.

It is said in 7 Am. & Eng. Enc. Law (2d Ed.), 784, subd. *c:*

"In the absence of express restrictions, a corporation may issue its bonds or debentures at discount, under an express or implied authority to raise money or pay debts, provided it does not violate the usury law."

If, however, the issuance or maintenance of the injunction is discretionary with the court, to refuse it is, in my judgment, an abuse of discretion, which this court should correct. I think the injunction should be retained until a hearing upon the merits. If retained until then, the rights of all the parties can be properly protected. If the injunction be now removed, the complainants in the chancery suit will lose whatever rights they have in the case.

I think the writ should issue.

CARPENTER, J., concurred with GRANT, J.