ATTORNEY GENERAL, *ex rel.* MAGUIRE, *v.* WAYNE CIRCUIT
JUDGE.

1. MUNICIPAL CORPORATIONS—EXECUTIVE AND LEGISLATIVE FUNC-
TIONS—COMMITTEES—INJUNCTION—DISBURSEMENTS.
   The common council of the city of Detroit has no power to pass
   a resolution directing the mayor to appoint a committee of
   fifty citizens for an investigation of the street railway situa-
   tion and authorizing the city controller to pay any bills pre-
   sented and audited by the mayor out of an appropriation for
   the purposes of the investigation; and action under the resolu-
   tion may be enjoined by a taxpayer.

2. SAME.
   The common council of a municipality may conduct its investi-
   gating through a committee of outsiders or through the
   mayor, provided the investigation is made in its behalf, and
   subject to its control.

3. CHARTER OF DETROIT—AUDITING AND ALLOWING CLAIMS.
   A resolution directing the controller of the city of Detroit to
   pay bills of the investigating committee when audited by the
   mayor is void, because it is in conflict with mandatory
   provisions of the charter requiring accounts to be audited by
   the council.

Mandamus by John E. Bird, attorney general, on re-
lation of Matthew J. Maguire, to compel Alfred J.
Murphy, circuit judge of Wayne county, to issue an in-
junction. Submitted April 6, 1909. (Calendar No. 23,-
313.) Reargued June 15, 1909. Writ granted July 15,
1909.

*Bishop & Sullivan,* for relator.

*P. J. M. Hally,* for respondent.

BROOKE, J. On the 9th day of February, 1909, the
common council of the city of Detroit passed the follow-
ing resolution:

"Resolved, That the sum of five thousand dollars be and is hereby appropriated from the moneys in the contingent fund and placed at the disposal of his honor, the mayor, to investigate the street railway question of the city of Detroit; and the city controller be and he is hereby directed to pay any bills presented and approved by his honor, the mayor, out of said appropriation."

On the 12th of February, 1909, the attorney general, on the relation of Matthew J. Maguire, a resident citizen and taxpayer of the city of Detroit, filed a bill of complaint in the circuit court of Wayne county for the purpose of securing an injunction against the common council of the city of Detroit "from authorizing the city controller to issue his warrant or any warrant upon the said city treasurer of the said city of Detroit for the payment of said sum of $5,000 or any part thereof, for the payment of any bill or expense of the said committee of 50 out of said contingent fund or any fund of the city of Detroit, or bill or expense incurred or to be incurred by the said mayor under said resolution of February 9, 1909, or any similar resolution theretofore or hereafter adopted by the said common council;" for an injunction against the mayor "from approving said resolution adopted by the common council of Detroit on February 9, 1909, and that he be temporarily and perpetually enjoined from approving any bill or expense under and by virtue of said resolution, and from expending any sum which may be paid to him under and by virtue of said resolution of February 9, 1909, in the payment of any bill or expense incurred and to be incurred by the said committee of 50, and in the event of any or all of said appropriation of $5,000 having been paid to him, the said mayor, that he be temporarily and perpetually enjoined from paying or expending said money so collected by him for any purpose whatever, and that he be ordered, adjudged, and decreed by this court, if any of said money has been paid to him, to account for and turn back into the treasury of the city of Detroit the same;" against Frank E. Doremus, city controller, "from

issuing his warrant or any warrants upon the city treasurer of the city of Detroit for the payment of said sum of $5,000, or any part thereof, as provided for in said resolution of February 9, 1909, for the liquidation of any bill or expense, presented and approved by the mayor of Detroit, under said resolution of February 9, 1909, out of said contingent fund or any fund of the city of Detroit, and from making and issuing any warrant upon the said treasurer for payment of any bill presented and approved, the purpose of which being to defray any bill or expense of the said committee of 50;" against Max C. Koch, city treasurer of the city of Detroit, "from paying out any money from the contingent fund or any other fund of said city upon any warrant or warrants executed by the city controller under and by virtue of the resolution adopted by the common council of the city of Detroit on February 9, 1909, hereinbefore set forth."

The bill of complaint avers, among other things, that the mayor of the city of Detroit has assumed to create a so-called "committee of 50," composed of private individuals unconnected with the administration of the city government and not authorized or created by the Constitution of the State or any law of the State, for the purpose of acting with the mayor in investigating the street railways of said city and their rights in and to the streets therein, with the view of advising the mayor and common council as to what action should be taken in reference thereto. The city by its answer admitted the passage of said resolution, and appointment of the committee of 50 by the mayor, and its purpose to use the fund appropriated by said resolution in defraying the expenses incurred by said committee in investigating the street car question in the city of Detroit. Further answering, it avers:

"That the city of Detroit is a city covering many miles of territory with a population, to wit, 400,000 inhabitants. That in the year 1862 certain rights were granted in the streets in the city of Detroit to certain gentlemen who afterwards organized the Detroit City Railway Com-

pany. That in the year 1879 these rights were extended for a period of 30 years. That these grants by the city of Detroit were made under the laws of the State of Michigan. That on the 14th day of November, 1909, the period of extension granted in the year 1879 will have been completed. That for a number of years the street railway question has agitated the public mind, and has been the subject of discussion in political campaigns. That these defendants are informed and believe that the character of the population, the manner in which the city has been built, is such that street railway service is essential in order to accommodate the people from day to day. That it is necessary to take steps to continue the street car service. That the city of Detroit as a municipality is powerless to engage in this enterprise itself, and that it is incumbent upon the officers of the city of Detroit to make an investigation and ascertain, if possible, upon what terms and upon what conditions the city may continue to enjoy street railway facilities. And that the expenditure of money for this purpose is the expending of money for a public purpose."

The answer denies that it was the purpose of the common council to deprive itself of the right to audit and allow the various items of expense according to the usual manner, but concedes that it is the purpose to defray the proper expenses of the committee of 50 in and to the investigation of the street car question. An order to show cause was issued by the circuit court for the county of Wayne, upon the return of which a preliminary injunction was denied. The case is here on an application for mandamus to compel the circuit judge to issue the injunction prayed for in the bill.

There being no final order or decree in this case, and the writ sought being a discretionary one, it might readily be determined that the relief prayed should be denied without a consideration of the merits. See *Kelsey* v. *Wayne Circuit Judge*, 120 Mich. 457 (79 N. W. 694); *George N. Fletcher & Sons* v. *Alpena Circuit Judge*, 136 Mich. 511 (99 N. W. 748). But inasmuch as the matter presents a question of unusual importance, and as the denial of the temporary writ is in effect the denial

of all the relief sought in the bill, we will consider the case as if it were here on appeal from a final decree.

Three objections to the action of the city are urged by the complainant:

(1) That the resolution was too vague.
(2) That it was unlawful to expend the money for this purpose.
(3) The resolution seeks to appropriate moneys out of the contingent fund to defray expenses which are not contingent.

We do not think that the first objection urged by the petitioner is tenable. It is a well-known fact, of which the court may take judicial cognizance, that the investigation of the street railway question involves a vast amount of inquiry in many directions. The physical value of the property of the railway company now upon the streets of the defendant city where franchises are soon to expire, the necessity to provide for the present and future demands of the city by additional trackage, the proper and remunerative rate of fare to be charged for the service to be rendered, the proper control of such service and the making of it adequate, a just and equitable system and rate of taxation, together with many other matters which are clearly of the highest importance to the city of Detroit, but could scarcely be enumerated, all of which, however, are clearly within the expression "to investigate the railway question." It may be supposed that the common council used the general language for the purpose of allowing such freedom as the character of the subject and the necessities of the situation might thereafter properly develop.

As to the other point raised, we conclude that there was no such knowledge on the part of the city at the time the budget of 1908 was passed upon by the common council and the board of estimates as to make it improper or unlawful for this appropriation to be made from the contingent fund. It is, as stated by the complainant, true that the city of Detroit knew in 1908 that certain of

the franchises of the Detroit United Railway would expire in November, 1909; but the exact manner in which it might thereafter be determined wise to enter upon an investigation of the rights and duties of the city and the railway company as to each other could not have been known. The contingent fund, as its name implies, is one designed for the purpose of giving elasticity to the finances of a municipality and to provide for emergencies such as may arise, a fair example of which is afforded by the case at bar.

The most important question, however, and the one which has given us most trouble, is that which arises from the placing of the money in the hands of the mayor for the designated purpose, but concededly and notoriously to be used by him in the defraying of the expenses incurred by a body of men sustaining no official relation to the city of Detroit, and being responsible to no one for the proper and honest discharge of the obligation it has assumed. A consideration of these facts at first seems to present insuperable obstacles to the carrying out of the project as designated by the common council; but upon further reflection it would seem that the action may be sustained upon broad grounds of public policy. The history of the case discloses the fact that the common council originally passed a resolution placing the fund in question at the disposal of the committee itself, but, upon advice of the corporation counsel, rescinded that resolution and passed the one here in question. There is no doubt that the common council by a committee of its own body could employ and properly compensate experts for the gathering and placing before the council all information absolutely necessary to enable it to intelligently execute the trust reposed in it by the municipality, with reference to this most important question. By its action in the present case we are disposed to the conclusion that it has said in effect that it desires for its guidance information to be gathered by experts selected by and under the direction of the committee. In other words, it has merely entered into a contract with

those experts upon the advice and recommendation of a committee of gentlemen in whose judgment it has confidence.

The subject of the right of a municipality to deal with matters of purely local moment in the manner dictated by the judgment of its properly constituted authorities has been before this court on more than one occasion.   In the case of *Attorney General* v. *City of Detroit,* 26 Mich. 264, it is said:

"It is the unwarranted use of the money that justifies the interference, and the pretense upon which it was raised is not important to the question of jurisdiction. * * * It should appear that the public has a substantial interest in the question; the right involved should be a public right, or at least not a private right merely; the wrong done or attempted, if it consist solely in a misuse or misappropriation of funds, should be either one involving questions of public policy, or, where that is not the case, the amount involved should be something more than merely nominal."

In *Torrent* v. *Common Council of Muskegon,* 47 Mich. 115 (10 N. W. 132, 41 Am. Rep. 715), it is said:

"But in saying this we do not assume that it belongs to this court, or any other, to dictate to the city how it shall spend its money.   The council must use its own discretion where it will save and where it will spend; and the case must be a very clear one, and the subterfuge very plain, before that discretion can be regarded as having been exceeded so as to show an excess of power under a pretense of keeping within it.   It is not the business of courts to act as city regulators, and, unless the authority of the representatives of the citizens has been exceeded, their action cannot be interfered with merely because it may not seem to other persons to be as wise as it might be."

In *City of Port Huron* v. *McCall,* 46 Mich. 565 (10 N. W. 23), the court, through Mr. Justice COOLEY, spoke as follows:

"There is a principle of law that municipal powers are to be strictly interpreted, and it is a just and wise rule.

Municipalities are to take nothing from the general sovereignty except what is expressly granted; but when a power is conferred which in its exercise concerns only the municipality, and can wrong or injure no one, there is not the slightest reason for any strict or literal interpretation with a view to narrowing its construction. If the parties concerned have adopted a particular construction not manifestly erroneous, and which wrongs no one, and the State is in no manner concerned, the construction ought to stand. That is good sense, and it is the application of correct principles in municipal affairs."

Upon a review of the whole case, considering the magnitude and importance of the issues involved as affecting the rights of the city of Detroit and the future of its citizens, we are of opinion that the case presented is not such an one as would compel this court to say that in the denial of the injunction sought by the complainant the learned circuit judge abused a discretion with which he is clothed.

The writ should be denied.

HOOKER and MOORE, JJ., concurred with BROOKE, J.

BLAIR, C. J. I am unable to concur in the result reached by Mr. Justice BROOKE in this matter. The solution of the street railway question for the city of Detroit is unquestionably a legislative problem for the determination of the common council. It only concerns the mayor in his official capacity, as all questions of municipal government concern the chief executive, charged with the duty of informing himself as to them and recommending action thereon from time to time. The investigations which the mayor makes are for the purpose of enabling him to properly discharge the duties of his office and are compensated by the salary provided for the office. It is not contemplated by the charter of Detroit, in my opinion, that the mayor shall make extensive investigations requiring the examination of witnesses and the expenditure of large sums of money for the purpose of equipping himself to recommend action to the common council, and

the powers essential to make the investigation effective *are not given* him therein.    Such investigations fall within the domain of legislative action, and the local legislature is given the necessary powers to make them effective. The charter not conferring this power upon the mayor, but, by implication, negativing it, the common council cannot, in my opinion, confer it.    Cooley on Constitutional Limitations (4th Ed.), pp. 248–250; 28 Cyc. pp. 463, 464; *Union Depot & Railroad Co.* v. *Smith*, 16 Colo. 361 (27 Pac. 329); 1 Dillon on Municipal Corporations (4th Ed.), § 96.

I have no doubt that the common council may choose its own method of collecting information to guide its legislative discretion.    *Flint, etc., Plank-Road Co.* v. *Woodhull*, 25 Mich. 99 (12 Am. Rep. 233).    It may, if it chooses, conduct its investigation through a committee of outsiders or through the mayor, providing the investigation is made in its behalf, in accordance with its directions, and subject to its control, and the results reported to it for its action.    *State Tax-Law Cases*, 54 Mich. 350 (20 N. W. 493).

The resolution under discussion was not for the purpose of aiding the local legislature to perform its duty, but to assist the chief executive to perform his duty.    The resolution directs the city controller "to pay any bills presented and approved by his honor, the mayor, out of said appropriation."    This provision is in contravention of mandatory provisions of the city charter and is therefore illegal and void.    *McCormick* v. *Bay City*, 23 Mich. 457.    The fact, as alleged, that the mayor intends to pursue the charter course for the allowance of his bills, cannot validate this invalid resolution.    The resolution must speak for itself unaffected by undisclosed intentions.

The writ will be granted.

Grant, Montgomery, Ostrander, and McAlvay, JJ., concurred with Blair, C. J.

Hooker, J.    I concur with the Chief Justice in the

opinion that the council has power to investigate existing conditions and necessities, as regards the street railway of Detroit, and to obtain and pay for professional and expert assistance therein; and I am not prepared to say that it may not call to its aid the business judgment of its citizens, for whose use it may procure, or cause to be procured, such assistance, and may pay the necessary expenses of such persons. I also think it may provide for the payment of the expenses of such persons, whose selection may be made by the council itself, a committee thereof, or confided to the mayor, through whom it may make its investigation. I find nothing in the resolution indicating that the information sought to be acquired was not for the benefit of the council, as well as the mayor, and I am not satisfied that the council has not power to provide for the legitimate expense of the office of mayor, especially in the performance of duties imposed on him by the council. It appears to be conceded by counsel that it could not confer upon the controller the authority to pay money upon the certificate of the mayor alone, and the learned circuit judge has found that there is no cause for apprehension that he will. I therefore concur in the denial of the writ.