TOWNSHIP OF WEST BLOOMFIELD *v.* DETROIT UNITED
RAILWAY.

1. CARRIERS—STREET RAILROADS—FRANCHISE — EQUIPMENT — SUF-
FICIENCY.

> Where the franchise granted by a rural township to a street
> railroad provides that its passenger cars shall be supplied with
> suitable appliances for a suburban railway, insuring the com-
> fort, convenience, and safety of its passengers, a finding of
> failure to comply with its franchise in that respect is proper
> on evidence that it has not provided its cars with toilet rooms
> and water tanks.

2. SAME—TICKETS—PLACE OF SALE.

> A provision that family tickets shall be sold entitling the holder
> or any member of his family to 10 rides from any point in the
> township to a certain city, and vice versa, means that such
> tickets shall be sold at any point at which such passengers
> have a right to take passage, i. e., on the cars; and placing
> them on sale at a store in the city named is not sufficient.

3. CERTIORARI — ISSUANCE OF MANDAMUS — QUESTIONS REVIEW-
ABLE.

> On certiorari to review the issuance of a mandamus by a circuit
> judge, the whole judgment is open for review, though, as to
> one of the questions involved, the judge decided in favor of the
> relator, not on the merits, but because the case would find its
> way to the supreme court on the other questions in any event.
> GRANT, J., dissenting.

4. CARRIERS—STREET RAILROADS — FRANCHISES — RATES OF FARE.

> A provision in a street railroad franchise, granted by a rural
> township, that the rate of fare from any point in the town-
> ship to Detroit "shall at no time exceed the rate then charged
> by the company from Pontiac to Detroit," not only includes
> the company mentioned in the franchise, but includes any
> line which that company or its assignee may at any time
> build or purchase.

Certiorari to Oakland; Smith, J.   Submitted June 19,
1906.   (Calendar No. 21,349.)   Decided October 29, 1906.

Mandamus by the township of West Bloomfield to com-

pel the Detroit United Railway to comply with the provisions of its franchise. There was an order granting the writ, and respondent brings certiorari. Affirmed.

The relator, the township of West Bloomfield, granted a franchise to the Pontiac & Sylvan Lake Railway Company, a street railway corporation, its successors and assigns, to construct a road through the township. Among the conditions granted and accepted and which are involved in this case are:

(*a*) All passenger cars to be used on said railway shall be of modern design, first class in every particular, and supplied with suitable appliances for a suburban railway, insuring the comfort, convenience, and safety of its patrons.

(*b*) The rate of fare in said township was fixed, and it was provided "that there shall be sold by said company, its successors or assigns, a family ticket entitling the purchaser or any member of his immediate family to 10 rides from any point in said township to and in the city of Pontiac, and vice versa, which ticket shall be sold for $1."

(*c*) "Provided further that the rate of fare from any point in said township to the city of Detroit, and vice versa, shall at no time exceed the rate then charged by the company from Pontiac to Detroit, and vice versa."

Another road, known as the "Detroit & Pontiac Railway," was then in operation from Pontiac to Detroit. The respondent's road was on another route, and was a competing line with the Detroit & Pontiac. The respondent subsequently became the purchaser and successor of the Pontiac & Sylvan Lake Railway Company. The fare over the competing road from Pontiac to Detroit was 25 cents. The Pontiac & Sylvan Lake road was completed about December 1, 1899. The rate of fare to Detroit was 25 cents. This rate of fare was continued for about two years, until its purchase by the respondent, which continued the same rate for the period of about six months. Relator claimed that the respondent had violated its franchise or contract in three particulars:

1. That it has not equipped its cars, which run through the township, with toilet closets, and water tanks for drinking purposes.

2. That it has not kept on sale upon its cars and within its township the family ticket.

3. That it has charged 35 cents fare to Detroit, and vice versa, instead of 25.

Issues were duly framed and decided in favor of the relator, the jury finding that the respondent had violated its charter in the three respects named, and the court entered an order directing it to comply with these provisions. The case is now before us for review upon the writ of certiorari.

*M. F. Lillis* (*Clark, Jones & Bryant*, of counsel), for relator.

*James H. Lynch* and *Brennan, Donnelly & Van De Mark*, for respondent.

GRANT, J. (*after stating the facts*). 1. The jury, to whom the issues were submitted, found upon the evidence that the respondent's cars were not of modern design, and were not supplied with suitable appliances for a suburban railway to insure the comfort and convenience of passengers, in that they had no toilet rooms or water tanks. The evidence fully sustains the finding. A car in a city, which one may take on emerging from his home, or after a few minutes walk, is different from a car running through the country, where its patrons often have to ride or walk an hour or more before entering the car. Facilities for attending to the demands of nature may be necessary in the one case, but not in the other.

2. The respondent placed on sale near its terminus, in a drug store in the city of Pontiac, the family tickets for which its franchise provided. This is not a compliance with its contract. It was not contemplated that the citizens of West Bloomfield should go to Pontiac to buy tickets. Every one had a right to purchase a family ticket at the place where he had a right to board the cars

with his family for passage. These roads do not have ticket offices stationed through the country. They do their business on the cars, and, wherever passengers have a right to take the cars, there they have the right under the franchise to purchase these tickets. *Sternberg* v. *State*, 36 Neb. 307 (19 L. R. A. 570); *City of Detroit* v. *Railway Co.*, 95 Mich. 456 (20 L. R. A. 79).

3. The third question is the one which perhaps presents the greatest difficulty. The learned circuit judge did not pass upon it, but expressly stated that he expressed no opinion, that "the language could be read both ways," and added:

"The case is one that will find its way to the appellate court anyhow, unless a compromise is agreed upon by the parties. As the respondent must take the case there if not satisfied with the findings of this court upon the questions of the cars and sale of commutation tickets, it is as well to issue the writ as to all the contentions of the petitioner, and let all be taken there for settlement by the respondent."

It is the duty of circuit courts to pass judgment upon cases presented to them for determination, and it then and then only becomes the duty of this court to review the conclusions reached by the circuit court. Circuit courts are not authorized by the Constitution and the law to sit and enter judgments solely that such judgments may be taken to the Supreme Court. Had this been the theory of the Constitution and the law the framers of the Constitution would have made provisions therefor. Suppose this were the only point in the case and the court had refused to hear and decide it, but had said:

"It will go to the Supreme Court in any event, and I will therefore enter a judgment not based upon any conclusion or judgment of my own, but solely for the purpose of having it taken to the appellate court."

Is this such a judgment as this court is called upon to consider and determine? I think not. The judge might as well have flipped up a cent to determine what judg-

ment should have been entered. In my opinion, this is not such a judgment as this court is called upon to consider and determine. Where a judgment or decree involves several distinct claims, both parties may appeal where some are decided against each. My Brethren, however, are of the opinion that while the court should have passed upon all the issues, yet there is a formal judgment rendered against the defendant for which it is not responsible, and therefore it would not be just to send it back for a new trial. We must therefore determine the question.

The language of the provision that the rate of fare from any point in the township to Detroit "shall at no time exceed the rate then charged by the company from Pontiac to Detroit, and vice versa," is unambiguous. It referred to the company mentioned in the franchise, but it included any line which that company or its assignee might at any time build or purchase. Counsel for respondent in their brief say:

"The clear purpose of this provision was to provide that the township of West Bloomfield should get the benefit of such rate as might be brought about by competition between the companies operating between the two terminal points and thus, though not by virtue of location naturally entitled to the benefits of competition, yet, by express contract, obtaining the benefit of the competition which may exist as to the terminal points."

There was then a competing line between Detroit and Pontiac, a shorter route by several miles than the one through the township of West Bloomfield, and the rate of fare was 25 cents. The fare over this line of the respondent was fixed at the same rate as that over the competing road, and was retained for about three years, until the Detroit & Pontiac Railroad was purchased by the respondent. There was afterwards no competition, the competing line belonging to the respondent, the assignee of the company mentioned in the franchise. If the respondent had built another line from Pontiac to Detroit it could not have

charged a higher rate over the old line than it did over the new.    The terms of the franchise must be construed strictly against the respondent.    When it purchased the Detroit & Pontiac line it became a line of the company. The rate charged from Pontiac to Detroit over that line is now 25 cents.    The respondent can charge no more over this line of its road.    It cannot thus destroy the competition for which the relator in fact contracted.

The order of the court below is affirmed.

McALVAY, J., concurred with GRANT, J.

CARPENTER, C. J.    I agree with my Brother GRANT that every judgment should be rendered in accordance with the deliberate convictions of the judge who announces it.    But if it is not, the judgment is none the less valid and binding upon the parties, and it is therefore none the less the duty of this court to review it.    In reviewing that judgment, we are called upon to determine whether it is or is not in accordance with law.    We are not called upon to determine the correctness of the reasoning of the trial judge or the sincerity of his convictions.    I therefore think it our duty to determine the third question discussed in the opinion of Justice GRANT.    Except as indicated above, I approve that opinion.

MONTGOMERY and OSTRANDER, JJ., concurred with CARPENTER, C. J.