PEOPLE *v.* DETROIT UNITED RAILWAY.

1. STREET RAILWAYS—FRANCHISE—EXTENSION—MUNICIPAL COR-
PORATIONS.

In a prosecution for violation of a municipal ordinance requir-
ing the sale of 8 street railway tickets for 25 cents for trans-
portation anywhere in the city, and giving the railway com-
pany a right to extend its tracks to the easterly limits of the
city, a purchase of the rights of a street railway outside the
city which subsequently changed its boundaries so as to in-
clude the purchased line, is properly treated as an extension
of the railway system. 2 Comp. Laws, § 6448.

2. SAME—FRANCHISE—WORDS AND PHRASES—STATUTES.

There are two methods of extending street railways within the
meaning of 2 Comp. Laws, § 6448; by construction and by
purchase.

3. SAME—FRANCHISE—INTERPRETATION—CONTRACTS.

A franchise requiring the sale of tickets at a certain rate, to be
good within the city, contemplates the growth and extension
of the city, and provides for single fares within the city
limits as they may from time to time be fixed, so as to in-
clude any street railway subsequently purchased and there-
after included in the city by a change of boundaries.

ON REHEARING.

1. SAME—MUNICIPAL CORPORATIONS—OPERATION OF ORDINANCES.

A municipal ordinance, regulation, or contract, designed for a
city at large, operates throughout its boundaries as enlarged
or extended from time to time.

2. SAME — FRANCHISE — CONSTRUCTION — CONSTITUTIONAL LAW —
VESTED RIGHTS.

Franchises being strictly construed as against the grantee, no
vested rights claimed under the franchise of that portion of
railway which respondent purchased are injured.

Certiorari to the recorder's court of Detroit; Phelan, J.
Submitted February 7, 1910. (Docket Nos. 110 and 111.)
Decided April 1, 1910. Rehearing granted May 7, 1910.
Reargued July 1, 1910. Former opinion affirmed Septem-
ber 28, 1910.

The Detroit United Railway was convicted of violating a city ordinance, and sentenced to pay a fine of $100. Affirmed.

*John J. Speed* and *Charles D. Joslyn* (*William L. Carpenter* and *John C. Donnelly*, of counsel), for appellant.

*Bernard F. Weadock* (*P. J. M. Hally*, of counsel), for the people.

MONTGOMERY, C. J.    The Detroit City Railway Company obtained a franchise from the city of Detroit in 1862. At that time the city limits were located at Mt. Elliott avenue.    In 1885, by amendment of the charter, the city limits were extended to Baldwin avenue.    In 1889 an ordinance was passed by the council and accepted by the Detroit City Railway Company, providing for the sale of workingmen's tickets, so called, 8 for 25 cents during certain hours of the day, good over any of its lines in said city for a single fare.    This ordinance also gave the right to the company to extend its double track on Jefferson avenue to the easterly limits of the city of Detroit.    The Detroit City Railway Company continued to operate the line until 1890.    Its rights and franchises were subsequently assigned to the defendant.    A later ordinance imposes the duty of keeping these workingmen's tickets on sale by conductors.    The defendant subsequently purchased a street railway located wholly without the city limits, and maintained under authority of a franchise from the township of Grosse Pointe and the village of Fairview.

In 1907 the city limits of Detroit were extended to include a large portion of this territory.    These two cases were brought to enforce penalties in the one case for refusing to accept a ticket good in the city of Detroit for passage over this last-named territory, and the other to recover a penalty for failure to keep tickets entitling a passenger to ride over this territory from any point in the

city on sale. The question in each case is therefore whether the requirements of the ordinance of 1889, that passengers should be conveyed to any point in the city limits binds the defendant, as assignee of the Detroit City Railway Company, to transport passengers to the easterly limits of Jefferson avenue as extended, notwithstanding that the defendant company is the assignee of the franchise granted by Grosse Pointe township and approved by the village of Fairview.

It is the contention of the city that, when the provision was made in the ordinance for transporting passengers anywhere within the city limits, it means the city limits as they may from time to time be fixed. On the other hand, the defendant contends that the defendant occupies the position of an assignee of the Grosse Pointe Railway Company, and that it is not, as to the railway in the late village of Fairview, an assignee of the Detroit City Railway Company. There are two methods of extending street railways. One is by construction, and the other may be by purchase under section 6448, 2 Comp. Laws. The purchased railway becomes as much a part of the system as does the railroad as constructed. So we think it after all gets back to the question of whether the real intent of this ordinance was to provide for single fares within the city limits as such limits should from time to time be fixed.

We think it not unreasonable to hold that this mutual contract was made in view of the power of the legislature of the State to increase or diminish the territory within the city, and that neither the city nor the company contemplated that in case of an extension of the lines of the company within the city, either by purchase or acquisition from another company, an increased fare should be demanded. The case of *Township of West Bloomfield* v. *Railway*, 146 Mich. 198 (109 N. W. 258, 117 Am. St. Rep. 628), involved a question not entirely dissimilar. In that case the company had contracted that the fare from any point in said township to the city of Detroit and

*vice versa* should not exceed the rate then charged by the company from Pontiac and Detroit and *vice versa*. The company while in competition with another line maintained a fare of 25 cents. It subsequently purchased the competing line, and over the line passing through West Bloomfield increased the fare from Pontiac to Detroit to 35 cents. It was held that the language of the provision that the rate of fare from any point in the township to Detroit should at no time exceed the rate then charged from Pontiac to Detroit and *vice versa* referred to the company mentioned in the franchise, and it included any line which that company or its assignee might at any time build or purchase.

A case almost on all fours with the case at bar is that of *Indiana R. Co.* v. *Hoffman*, 161 Ind. 593 (69 N. E. 399). Its reasoning is convincing, and we think the case should be followed. The case presented does not involve in this view an interference with any vested right of the company as assignee of the Fairview Railway, but resolves itself simply into a question of the construction of the ordinance, and we construe the ordinance to include any street railway constructed or purchased by the defendant which shall be within the city of Detroit as the limits of said city may from time to time be fixed by the legislature.

The convictions are affirmed.

McALVAY, BROOKE, BLAIR, and STONE, JJ., concurred.

### ON REHEARING.

STONE, J. A rehearing having been granted in these cases, they have been reargued and reconsidered. The sole question here involved, as we view it, is the construction to be placed upon an ordinance granted the Detroit City Railway in 1889. Subdivision D of section 3 of such ordinance reads as follows:

" Such arrangements shall be made by said company that within two months after this ordinance shall have been accepted by said company it shall carry such passen-

gers as shall have taken passage on the cars between the hours of five-thirty o'clock and seven o'clock in the morning, and between the hours of five-fifteen o'clock and six-fifteen o'clock in the afternoon, over any of its lines in said city for a single fare, to be paid for by a ticket sold at the rate of eight tickets for twenty-five cents, for one continuous trip, with all the rights of transfer and through carriage provided for in paragraphs 'A,' 'B' and 'C' of this section."

The ordinance was duly accepted. It is conceded that the Detroit United Railway has become the successor and assignee of the Detroit City Railway Company by purchase. This being so, we think it accepted the benefits of the franchise granted, as well as assumed the obligations imposed upon it.

Does the ordinance relative to workingmen's tickets have application to that territory now a part of the city, but without its confines at the time the ordinance was granted? A further investigation of the questions involved satisfies us of the correctness of the reasoning and conclusion of Chief Justice MONTGOMERY who wrote the former opinion in these cases (ante, 416), to which opinion reference is here made. He cited and followed the case of *Indiana R. Co.* v. *Hoffman*, 161 Ind. 593 (69 N. E. 399), decided by the supreme court of Indiana. That case is well reasoned, and is supported by the authorities therein cited, and we think it should be followed in these cases. It may be asserted as a general proposition, applicable here, that a municipal law or ordinance designed for a city at large operates throughout its actual boundaries, whatever they are, and is not affected by the fact that these are enlarged from time to time. The following authorities support the proposition that a municipal ordinance, regulation, or contract designed for a city at large operates throughout its boundaries whatever their change: McQuillin on Municipal Ordinances, § 218; 1 Dillon on Municipal Corporations (4th Ed.), § 185, citing *St. Louis Gaslight Co.* v. *City of St. Louis*, 46 Mo. 121; *Town of Toledo* v. *Edens*, 59 Iowa, 352 (13 N. W. 313).

In *St. Louis Gaslight Co.* v. *City of St. Louis*, above cited, which involved the amount due the company for gas furnished the city in its enlarged boundaries, the court said:

"The additional orders for lamps were all to be within the city, and the city is a unit, though with changing boundaries. There might be a question as to the extension of the exclusive rights of the plaintiff, for grants of monopolies are to be strictly construed; but there is no doubt that a city ordinance, or a city contract, designed for the city at large, operates throughout its boundaries whatever their change."

In *Town of Toledo* v. *Edens*, it is said:

"If an ordinance be enacted and afterward the city limits be extended by adding thereto adjacent territory, no one would contend that a new ordinance must be passed in order to be operative in the newly acquired territory."

It is true that that case involved a police regulation, but the authorities cited seem to make no distinction between such a regulation and an ordinance or contract relating to traffic regulation.

We agree with Chief Justice MONTGOMERY that the cases presented do not involve an interference with any vested right of the company as assignee of the Fairview Railway, but resolves itself into a question of the construction of the ordinance. The rule that the terms of the franchise must be construed strictly against the respondent, as held in *Township of West Bloomfield* v. *Railway*, 146 Mich. 198 (109 N. W. 258, 117 Am. St. Rep. 628), is applicable here.

We see no reason to recede from the former ruling in these cases, and the convictions are affirmed.

BIRD, C. J., and OSTRANDER, HOOKER, MOORE, MC-ALVAY, BROOKE, and BLAIR, JJ., concurred.