TOWNSHIP OF ROSS *v.* MICHIGAN UNITED RAILWAYS CO.

1. MANDAMUS—RAILROADS—FRANCHISE—MUNICIPAL CORPORATIONS
—TOWNSHIPS.

   Mandamus lies to compel an electric interurban railway cor-
   poration to conform to the provisions of its franchise in a
   township which imposed conditions relative to the rate of
   fares to be charged. HOOKER, MOORE, BROOKE, and STONE,
   JJ., dissenting.[1]

2. SAME.

   That portion of the order of the circuit court commanding the
   company to stop its cars anywhere in a certain township on
   signal, where it appeared that eleven cars each way, called
   local cars, were accustomed to stop as required, but limited
   cars took on passengers at certain stations only, is vacated on
   the ground that the limitations of the franchise were not in-
   tended to apply to such limited service, which was not con-
   templated by the original franchise, and which was carried
   on by through cars to cities to which respondent had ex-
   tended the line of railway built by the original grantee of
   the franchise rights.

3. SAME—ADEQUATE REMEDY—RAILROAD COMMISSION.

   Whether or not the relator has a remedy before the railroad
   commission, it may enforce respondent's legal duty by man-
   damus. HOOKER, MOORE, BROOKE, and STONE, JJ., dissent-
   ing.

4. SAME—INJUNCTION.

   And the relief granted does not operate solely as injunctive re-
   lief since it compels the respondent to observe the conditions
   of its franchise limiting the rate of fare. HOOKER, MOORE,
   BROOKE, and STONE, JJ., dissenting.

Certiorari to Kalamazoo; Smith (Clement), J., presid-
ing. Submitted June 14, 1910. (Calendar No. 33,490.)
Decided March 13, 1911.

Mandamus by the township of Ross to compel the

---

[1] Right to enforce by mandamus duty of public-service corpora-
tion arising wholly from contract, see note in 13 L. R. A. (N. S.)
1084.

Michigan United Railways Company to observe the provisions of a franchise. An order granting the writ is reviewed by respondent on certiorari. Modified.

*Samuel H. Van Horn* (*Boudeman, Adams & Weston*, of counsel), for relator.

*Sanford W. Ladd* (*Alfred J. Mills*, of counsel), for respondent.

HOOKER, J. The Michigan United Railways Company is a Michigan corporation. It operates an electric railway and runs cars between Jackson and Kalamazoo. The relator is a township in Kalamazoo county through which respondent's line passes. The village of Augusta is within the confines of said township territorially, but as we understand it is in no way governed by the township, nor is it any part of the township for political or municipal purposes. The railway occupies portions of the highway in said township and village, and of respondent's cars there were 22 daily that were local cars, stopping at all points in the highway to take or leave passengers. The track through the township of Ross is a line built some years ago from Battle Creek to Kalamazoo by the Michigan Traction Company, a corporation organized in and under the laws of the State in January, 1897. Its right to lay its track in and through Ross township and the village of Augusta and other townships along the highways and streets was acquired by obtaining the consent of the township and village boards to the building of the same. This consent was evidenced in each instance by a writing. Such writing contained the consent to the construction of the road through said township or village, and also the conditions upon which the consent was given.

The parties proceeded under the provisions of 2 Comp. Laws, § 6446:

"Any street railway corporation organized under the provisions of this act, may, with the consent of the corporate authorities of any city or village, given in and by

an ordinance or ordinances duly enacted for that purpose, and under such rules, regulations, and conditions as in and by such ordinance or ordinances shall be prescribed, construct, use, maintain and own a street railway for the transportation of passengers, in and upon the lines of such streets and ways, in said city or village, as shall be designated and granted from time to time for that purpose, in the ordinance or ordinances granting such consent; but no such railway company shall construct any railway in the streets of any city or village until the company shall have accepted in writing the terms and conditions upon which they are permitted to use said streets; and any such company may extend, construct, use and maintain their road, in and along the streets or highways of any township adjacent to said city or village, upon such terms and conditions as may be agreed upon by the company and the township board of the township, which agreement and the acceptance by the company of the terms thereof, shall be recorded by the township clerk, in the records of his township. Any company organized under the provisions of this act may construct, use, maintain and own a street railway for the transportation of passengers, in and along the streets and highways of any township, upon such terms and conditions as may be agreed upon by the company and the township board of the township, which agreement and the acceptance by the company of the terms thereof, shall be recorded by the township clerk in the records of the township."

This road became the property of respondent, which now operates a continuous line from Jackson to Kalamazoo, of which this road in the township and village aforesaid is a part. In its schedule it has provided for 11 cars each way between Jackson and Kalamazoo. These are local cars, stopping at any point upon a hail or request, and we understand that no complaint is made that in running these the respondent does not conform to the letter of the conditions imposed by the board of the township of Ross, the relator. In addition to these 11 local cars the respondent has provided for and has scheduled and runs five cars each way, called limited cars, which stop only at points designated by the respondent, either to receive or

discharge passengers. All these cars run through between Jackson and Kalamazoo.

As we have already indicated, the village of Augusta is situate within the township of Ross, and the Michigan Traction Company laid its tracks through this village under the consent of the village board, and not under a consent given by the township board of Ross, which consent was expressly limited to lands within the said township outside of the village. This is perhaps unimportant, however. Bedford township lies east of and contiguous to the township of Ross, and its west line is about three miles east of the village of Augusta, and respondent's line goes through this township. We understand that each of said townships and said village consented that a minimum fare of 5 cents might be charged by the traction company, and a fare not exceeding 2 cents a mile. It is upon the conditions imposed by the township of Ross that this case is planted. The respondent has been charging a 10-cent fare to passengers taking the car in Bedford township and riding into the village of Augusta, although the distance is not four miles.

The writing evidencing the agreement between the township board of Ross township and the Michigan Traction Company contains the following provisions, which we state in substance:

(1) Permission to the Michigan Traction Company, its successors and assigns, to construct and use an electric street railway through and over certain designated highways in the township; the streets and highways within the limits of the village of Augusta not being included.

(2) "SEC. 14. Cars shall be operated on said road as the traffic demands and the business warrants, in case said company, its successors and assigns, should cease to operate cars on its said railway at any time after the same is constructed and should fail to so run said cars in the usual course of business for a period of fourteen (14) consecutive months, then this franchise hereby granted shall be null and void and said company, its successors and assigns shall forfeit all its rights hereunder. * * *

(3) "SEC 16. * * * The cars of said railway shall

be run as often as traffic demands and business warrants and said cars shall stop at any point along such line where they are hailed by people who desire to get on. * * *

(4) "SEC. 20. Said company, its successors and assigns, shall not charge more than two (2) cents per mile for each passenger carried, provided, however, that no single fare shall be less than five (5) cents."

There are many other provisions in relation to the character, construction, location, and management of the road, and the condition in which the highways should be left and kept, which it is unnecessary to discuss.

There is no evidence deducible from the record in the case that the schedule of local trains did not reasonably comply with the provision of the writing, i. e., "The cars of said railway shall be run as often as traffic demands and business warrants."

Application was made by the township board to the circuit court of Kalamazoo county for a mandamus:

(1) To compel the stopping of all cars on signal or request by passengers desiring to take or alight from cars.

(2) To restrain the charging of, i. e., commanding defendant to cease charging more than 2 cents a mile to passengers, where the sum charged equals or exceeds 5 cents, to cease operating said cars in Ross township at the rate of speed dangerous to the public, persons, teams, and stock, and to persons traveling in the defendant's passenger cars within said township, and for further relief.

Counsel for respondent appear to have contended that:

(1) The court had no jurisdiction of the subject-matter, for the reason that the questions involved are within the jurisdiction of the railroad commissioners.

(2) If the court had jurisdiction, mandamus should be refused for the reasons: (a) That it is not a proper remedy; (b) being a discretionary remedy, it should not be applied in this case, because it would work an injustice.

(3) Upon the merits it was said that the writing does not by its terms preclude the running of the limited cars, or the right to charge a 10-cent fare to passengers boarding the car in Bedford and residing in Augusta.

The learned circuit judge held in substance:

(1) That if the Railroad Commission might act in such a case as this, the court also has jurisdiction to give relief or deny it in such cases as this.

(2) That mandamus is a proper remedy.

(3) That the agreement between the traction company and the relator was a contract, and the terms are plain and mean that all cars run "shall be stopped at any point along the line, where they are hailed by people who want to get on."

(4) That any passenger taking a car in Ross township is entitled to ride as far as he chooses at a 2-cent rate with a 5-cent minimum.

The writ was granted:

(1) Compelling respondent to stop all cars on signal in Ross township.

(2) Compelling the stopping of all cars at any point in Ross township when a passenger should request it for the purpose of alighting.

(3) Commanding respondent not to charge residents of Ross township more than a rate of 2 cents per mile with a minimum fare of 5 cents.

The respondent has brought the proceeding here by writ of certiorari under our rules; and the same questions are raised here.

There are two questions that can be said to be the merits of this case:

(1) Whether the relator should be permitted to compel the stopping of all cars upon signal or request.

(2) Whether the railroad company should charge more than 2 cents a mile, with one 5-cent minimum to passengers riding in parts of two townships.

1. **Stopping Cars.** There is no express provision of the accepted conditions, which requires the stopping of cars at all points along the line to let off passengers. There is an express provision that:

"The cars of said railway shall stop when hailed by people who desire to get on."

Therefore, if we are to sustain the order of the circuit

165 Mich.—3.

court in its entirety, we must hold that the obligation to stop for passengers desiring to alight must be inferred from the provision requiring a stop for passengers to board the car. Whatever the relations are between the township and company under the statute and the writing, and whether the latter constitutes a contract between them or not, and what remedies are open to individuals, the township, or the State, for noncompliance with the conditions, and whether the conditions should receive the construction claimed, need not be considered upon this question, for the reason that the remedy invoked here, *i. e.*, mandamus, will not be granted where it will do an injustice.

It is fairly inferable from this record that the running of limited cars is in furtherance of a service demanded by, and convenient to, the general public and injurious to no one, and it not appearing that the 11 local cars each way were inadequate to supply the demands of traffic, there is little reason for compelling the crippling or destroying the limited service, if, indeed, it were necessary to hold that the strict terms of the writing require that all cars be stopped. Were the local service inadequate to comply with the condition, we might be called upon to deal with some of the questions indicated. But where, as in this case, the effort is made to enforce a condition strictly, and unnecessarily, and against the public interests, there is little reason for departing from the general rule that a mandamus being a discretionary writ, will be denied in such cases. We cite some of the cases supporting this rule: *People* v. *City of East Saginaw*, 33 Mich. 164; *People* v. *Board of State Auditors*, 42 Mich. 422 (4 N. W. 274); *Lamphere* v. *A. O. U. W.*, 47 Mich. 429 (11 N. W. 268); *Hale* v. *Risley*, 69 Mich. 596 (37 N. W. 570); *Durand* v. *Saginaw Circuit Judge*, 76 Mich. 624 (43 N. W. 583); *Tennant* v. *Crocker*, 85 Mich. 328 (48 N. W. 577); *MacKinnon* v. *Auditor General*, 130 Mich. 552 (90 N. W. 329). In the latter case we held that:

" Mandamus is a discretionary writ, and will not issue

unless it be made to appear that justice requires it." Per Moore, J.

In *O'Brien* v. *Wayne Circuit Judge*, 131 Mich. 67 (90 N. W. 680), we said the well-settled rule is that mandamus is a discretionary writ, and will not be granted where abstract justice does not require it. See, also, *George N. Fletcher & Sons* v. *Alpena Circuit Judge*, 136 Mich. 511 (99 N. W. 748); *Board of Road Com'rs of Wayne County* v. *Board of Auditors*, 148 Mich. 255 (111 N. W. 901). In *New York Mortgage Co.* v. *Secretary of State*, 150 Mich. 197 (114 N. W. 82), it was said:

"Mandamus is a discretionary writ which will not be awarded in all cases in which a *prima facie* legal right is shown, but will be withheld whenever the public interest would be injuriously affected by its issuance, or there is a doubt of its propriety." Per McAlvay, J.

See cases there cited. *Electric Park Amusement Co.* v. *Wayne Circuit Judge*, 155 Mich. 640 (119 N. W. 1095). See *Village of Excelsior* v. *Railway Co.*, 108 Minn. 407 (122 N. W. 486, 24 L. R. A. [N. S.] 1035), cited by counsel.

2. **Fares.** We are asked to issue a writ of mandamus "commanding respondent to cease charging" the people of Ross township, in excess of 2 cents per mile, with a 5-cent minimum rate for each passenger carried by defendant on its passenger cars. If the statute, or the conditions under which the road from Battle Creek to Kalamazoo was built, are such as to require the respondent to furnish to its passengers over the Michigan Traction Company's line, or those from the township of Ross, a 2-cent rate with a 5-cent minimum charge—and it is not improbable that such might be held a reasonable construction—a greater charge is unlawful, and every passenger is entitled to ride at the lawful rate. In several cases private persons have been permitted, by an action in justice's court, to recover back money paid in excess of lawful fares, while in the case of *People* v. *Railway*, 162 Mich. 460, 463 (125 N. W. 700, 127 N. W. 748), prosecutions and con-

victions under an ordinance of the city of Detroit have been affirmed, and we have reason to believe that a final affirmance of such cases has been followed by an observance by the respective defendants of the rule laid down in such actions as to rates. *Kissane* v. *Railway,* 121 Mich. 175 (79 N. W. 1104); *Rice* v. *Railway,* 122 Mich. 677 (81 N. W. 927, 48 L. R. A. 84); *Coy* v. *Railway,* 125 Mich. 616 (85 N. W. 6); *Vining* v. *Railway,* 133 Mich. 539 (95 N. W. 542); *Zagelmeyer* v. *Railroad Co.,* 102 Mich. 214 (60 N. W. 436, 47 Am. St. Rep. 514); *People* v. *Railway,* 162 Mich. 460, 463 (125 N. W. 700, 127 N. W. 748).

Mandamus is not well adapted to enforce the right of a citizen to a given rate, for if a man desires to travel he cannot usually, conveniently, defer his trip until a controversy about rates can be settled. It is easier to pay the rate and sue, or refuse to pay and be put off from the train, and sue for damages, and quite as effective. In some cases mandamus has been used on application by the city authorities to compel the putting on sale of tickets in compliance with ordinances of such cities; and in one case this was done at the instance of a township board, no question being raised or discussed as to the right of the board to ask a mandamus to the end that the condition as to rates be complied with. *Township of West Bloomfield* v. *Railway,* 146 Mich. 198 (109 N. W. 258, 117 Am. St. Rep. 628). Other conditions were involved in this case.

We have no doubt that the State has full power, through its attorney general, or, perhaps, other officers, to enforce compliance with the conditions as to rates, by proper proceedings. Whether a township is clothed with such authority is a question upon which much might be said. But whether it is or not, it is clear that the order asked for in this case is the equivalent of an injunction, and a mandamus cannot be used for injunctive relief. This subject has been considered and authorities cited in the recent case of *Attorney General* v. *Common Council of the*

*City of Detroit,* 164 Mich. 369 (129 N. W. 879), and for that reason the subject is not discussed at length here. The effort here is to command the respondent to cease charging a rate which is merely a command to not charge the rate hereafter, and that is clearly injunctive relief, for such is the exact office of an injunction. Either is a restraining order.

The order should be reversed, and the writ denied.

MOORE, BROOKE, and STONE, JJ., concurred with HOOKER, J.

BLAIR, J. I am unable to concur in the opinion of Mr. Justice HOOKER, and I therefore proceed to state briefly the grounds of my dissent.

The Remedy. In considering this question, it is to be borne in mind that the application for the writ was not made to this court, but to the circuit court, which exercised its discretion in favor of granting the writ. We are asked to review the action of the circuit court upon certiorari and are not called upon to exercise our discretion, but, so far as this aspect of the matter is concerned, to determine whether the circuit judge abused his discretion. In my opinion, however, the writ of mandamus was the appropriate and the only adequate remedy. *Township of Grosse Pointe* v. *Railway,* 130 Mich. 363 (90 N. W. 42). This case is on all fours with the present case, and the question of the remedy was expressly raised, considered, and determined. The *Grosse Pointe Case* was followed in *Township of West Bloomfield* v. *Railway,* 146 Mich. 198 (109 N. W. 258, 117 Am. St. Rep. 628), a case which is also precisely in point.

It is said, however, that the *Grosse Pointe Case* is expressly rested upon *City of Lansing* v. *Railway Co.,* 109 Mich. 123 (66 N. W. 949), which was overruled by *Michigan Mut. Fire Ins. Co.* v. *Wayne Circuit Judge,* 112 Mich. 270 (70 N. W. 582). It would seem more logical to hold that when the court followed the *Lansing Case* it overruled the case in 112 Mich. if the two cases

are irreconcilable and cannot stand together. I think, however, that there is no repugnancy between the two cases. In the *Lansing Case* it was held that a plain legal duty imposed upon a street railway company by law in favor of a municipality is enforceable by mandamus. In the case of *Michigan Mut. Fire Ins. Co.* v. *Wayne Circuit Judge, supra,* it was sought to compel a circuit judge to dismiss a suit for want of proper service of a summons. It was held, as fairly stated in the headnote:

"Except in cases where delay is calculated to produce injury, mandamus will not issue to control the action of the circuit judge if the aggrieved party has a remedy by appeal or writ of error."

The same justices who sat in that case participated in the decision of the *Grosse Pointe Case*, with the exception of Justice LONG. It is apparent, I think, that the court regarded the *Lansing Case* as stating the law in this State since the adoption of the rule stated in 112 Mich., and as distinguishable from, and in no wise affected by, that case. I therefore regard this question as conclusively settled by our own decisions. See, also, *People* v. *State Treasurer,* 24 Mich. 468; *Tawas, etc., R. Co.* v. *Iosco Circuit Judge,* 44 Mich. 479 (7 N. W. 65) *Sayers* v. *Auditor General,* 124 Mich. 259 (82 N. W. 1045); Merrill on Mandamus, § 27; 26 Cyc. p. 172*b*.

**The Relief.** It is established by the pleadings and the stipulation, as to the facts, that the railway through the township of Ross is but a portion of a continuous line between Battle Creek and Kalamazoo.

"That under the franchise, Exhibit A, the Michigan Traction and respondent's road extended from Kalamazoo, Michigan, through Ross township east as far as Battle Creek," etc.

" That during the time that said line of road was operated by said Michigan Traction Company in said township, it stopped the passenger cars which were operated by it at any point within said township which was designated by a sign, and did, when so hailed by said people,

permit them to board the cars at said points and in every instance, when requested to do so, permitted people who were on its cars to alight therefrom, and stopped its cars to permit them to do so, at any point in said township."

"And respondent did likewise up to and including November 21, 1907, when it first commenced to operate limited cars within said township."

**The Rate of Fare.** Section 20 of the statutory contract provides:

"Said company, its successors and assigns, shall not charge more than two (2) cents per mile for each passenger carried, provided, however, that no single fare shall be less than five (5) cents."

The line constructed in the township of Ross under the franchise was not, and never was intended to be, a complete electric line, but only a small portion of a complete line between Battle Creek and Kalamazoo. The franchise granted by every township and village between Battle Creek and Kalamazoo contained the same limitation as to the charge per mile, and a uniform rate prevailed therefore throughout. The provision is general in its terms; the township had authority to contract for a uniform rate over the entire line; the language of the provision is not limited to the township, but appears to extend to the entire line, and was construed by the Michigan Traction Company and respondent for 10 years to apply to the entire line. The construction which the company itself has placed upon the contract is entitled to weight. *Rice v. Railway*, 122 Mich. 677 (81 N. W. 927, 48 L. R. A. 84). And "The terms of the franchise must be construed strictly against the respondent." *Township of West Bloomfield v. Railway*, 146 Mich. 198 (109 N. W. 258 [117 Am. St. Rep. 628]); *People v. Railway*, 162 Mich. 463 (127 N. W. 748). I think the circuit judge properly held that the respondent was not entitled to charge a 10-cent fare for the three-mile ride from the waiting room in Bedford township to the village of Augusta in Ross township.

**The Stoppage of Cars on Signal.** "The cars of said

railway shall be run as often as traffic demands and business warrants and said cars shall stop at any point along such line where they are hailed by people who desire to get on."

I regard the language "as traffic demands and business warrants" as referring to the traffic and business of the line contemplated when the franchise was granted, viz., between Battle Creek and Kalamazoo.   As heretofore remarked, the company was engaged in obtaining a continuous franchise for the purpose of operating a continuous line of railway, as well understood by the municipalities granting the franchises, and such franchises should be construed with reference to that fact.   Although this provision is to be strictly construed against respondent and in favor of relator, such construction should be reasonable.   In my opinion, the term "the cars of said railway" refers to the cars performing the usual service contemplated when the contract was entered into, and not to the cars introduced 10 years later to perform a service not contemplated, and which could not be performed at all, if the cars were required to stop wherever hailed.   By repeated decisions of this court, it has been held that such public franchises create relations in the nature of contractual, and that such statutory contracts are enforceable in the courts.   *City of Detroit* v. *Railway Co.*, 95 Mich. 456 (54 N. W. 958, 20 L. R. A. 79, 35 Am. St. Rep. 580); *City of Lansing* v. *Railway Co.*, 109 Mich. 123 (66 N. W. 949); *Kissane* v. *Railway*, 121 Mich. 175 (79 N. W. 1104); *Rice* v. *Railway*, 122 Mich. 677 (81 N. W. 927, 48 L. R. A. 84); *Coy* v. *Railway*, 125 Mich. 616 (85 N. W. 6); *Vining* v. *Railway*, 133 Mich. 539 (95 N. W. 542); *Township of Grosse Pointe* v. *Railway*, 130 Mich. 363 (90 N. W. 42); *Township of West Bloomfield* v. *Railway*, 146 Mich. 198 (109 N. W. 258, 117 Am. St. Rep. 628); *City of Monroe* v. *Railway*, 143 Mich. 315 (106 N. W. 704).   The carefully drawn resolution granting the franchise and accepted by respondent, and the effort to enforce it, evidence to my mind a commendable

effort on the part of the township board to protect the interests of the township in the first instance, and afterwards to protect their rights under the franchise agreement when invaded, in the opinion of the board and their legal advisers.

Since writing the foregoing, the opinion of Mr. Justice Hooker has been revised, and it is now said, among other things, that relator is seeking injunctive relief, which is not permissible in this form of action.    I do not regard this objection as tenable.    The essence of this proceeding is the compulsion of defendant to observe and comply with the terms of its franchise; to fix rates of fare in accordance with its provisions.    In the *West Bloomfield Case, supra,* the defendant railway was charging 35 cents fare instead of 25 cents as required by its franchise, and the writ was issued to compel it to charge the franchise rate, although this necessarily implied that it should not charge the higher rate.

The writ of mandamus as granted was too far reaching. Applying to the line between Battle Creek and Kalamazoo, as limited by this opinion, the order is affirmed.

Ostrander, C. J., and Bird, and McAlvay, JJ., concurred with Blair, J.