TOWNSHIP OF SANDSTONE *v.* MICHIGAN RAILWAY CO.

1. STREET RAILWAYS—FRANCHISES—FORFEITURE—MUNICIPAL COR-
PORATIONS.

> A municipality may not extrajudicially forfeit a street
> railroad franchise where the company has constructed its
> road after the time prescribed by the ordinance has ex-
> pired, and such construction is carried on without inter-
> ference by the municipality, and especially where the
> company entered upon the construction of the road in
> good faith, relying upon the grant.

2. SAME.

> Municipalities, in the performance of legislative functions
> involving discretion and judgment, can so act only at
> authorized meetings duly held, and the members of a
> township board granting a franchise to a street railroad
> cannot make a valid determination of forfeiture binding
> upon the municipality by their assents separately or in-
> dividually expressed.

3. SAME—FRANCHISES—CONSTRUCTION.

> Where an interurban railroad franchise granted by a
> township relating to the charge to be made was clear and
> unambiguous and provided for a rate of 1½ cents per mile
> from any point within the township to any point within
> a city, and from any point within the city to any point
> within the township, with a minimum charge of 5 cents,
> and this construction of the franchise had been adopted by
> the various operating and owning companies during a
> period of 12 years, *held*, that the operating company was
> operating the interurban railroad under such franchise and
> that it was immaterial that the grantee of the franchise
> constructed the road only to a particular point in the city,
> and not to the interurban station, and did not warrant
> the collection of a city 5 cent fare for the ride between
> such point and the interurban station over tracks of a
> street railroad under a city franchise, to the rights under
> which the operating company as lessee had succeeded.

Certiorari to Jackson; Parkinson, J. Submitted
April 17, 1917. (Calendar No. 27,516.) Decided Sep-
tember 27, 1917.

Mandamus by the township of Sandstone to compel the Michigan Railway Company to observe the terms of a franchise. From an order granting the writ, defendant brings certiorari. Affirmed.

*James J. Noon* and *Lyman B. Trumbull*, for plaintiff.

*Sanford W. Ladd (Charles E. Lewis* and *Warren, Cady, Ladd & Hill*, of counsel), for defendant.

This is certiorari to mandamus.

Relator, the township of Sandstone, sought by the use of the writ to compel the Michigan Railway Company to observe the terms of a certain franchise granted by said township to one Foote with relation to the rate of fare to be charged by said railway company within said township and within the city of Jackson. This franchise is dated July 10, 1901, and has been duly assigned to the lessor of the respondent, which is the operating company. Sections 6, 8, and 11 of said franchise are as follows:

(1) Section 6: "The rates of fare for each passenger shall not exceed one and a half cents per mile and from any point within said township to any point within the city of Jackson, and from any point within the said city of Jackson to any point within said township of Sandstone, except in cases where the amount shall be less than five cents, when five cents may be charged, and a fraction of a cent may be counted and charged as one cent. Children under five years of age shall be carried free when accompanied by parent or guardian."

(2) Section 8: "If said grantee, his successors or assigns, shall at any time refuse or neglect to comply with the provisions of this franchise after due notice in writing by the town clerk or other person under the direction of the township board, the authority, powers and privileges herein granted shall henceforth cease and be forfeited."

Section 11: "Said grantee shall commence the construction of said railway within three months from

the passage hereof, and shall complete said construction within the ensuing nine months. In default thereof, the privileges hereby granted shall be forfeited."

In its answer to the original petition for mandamus respondent admitted:

"*Fourth.* Answering paragraph 4, this respondent admits that it is a corporation organized and doing business under the laws of the State of Michigan, but denies that it owns any street railway as described in said paragraph, but admits that it maintains and operates the lines of street railway that are owned by the Michigan United Railways Company, a Michigan corporation, including both street railways and interurban street railways in the cities of Jackson and Kalamazoo, and the interurban street railway between said cities, and further alleges the fact to be that the lines of interurban street railway built and constructed by the Jackson & Battle Creek Traction Company, to which company said Exhibit A, the franchise in question, was assigned, was sold by the Jackson & Battle Creek Traction Company to the Michigan United Traction Company, and that the tracks of said Jackson & Battle Creek Traction Company only extended along West Main street within the city of Jackson to where First street intersects said West Main street, and that the said lines within the city of Jackson, so-called, were sold by the Jackson Consolidated Traction Company to the Michigan United Railways Company, and that said Jackson Consolidated Traction Company secured its rights in and to said Jackson City Lines from the Jackson-Suburban Traction Company by deed and bill of sale, and that the said contracts and franchise under which said Jackson-Suburban Traction Company and its successor, Jackson Consolidated Traction Company, operated, were separate and distinct from the contracts and franchise under which said Jackson & Battle Creek Traction Company operated, and that the contracts and franchises granted by the city of Jackson under which said Jackson-Suburban Traction Company and its successor, Jackson Consolidated Traction Company, were operated, were binding agreements between said traction companies and the city of Jackson prior to the

granting of the franchise by said township of Sandstone to William A. Foote, and by William A. Foote assigned to the Jackson & Battle Creek Traction Company, an interurban street railway company as distinguished from a street railway company operating the city lines, and that under the terms of the franchise granted by the city of Jackson to the Jackson & Battle Creek Traction Company they operated over the tracks on West Main street laid and built by the Jackson & Battle Creek Traction Company from the city limits to where First street intersects West Main street, said Jackson & Battle Creek Traction Company was expressly bound by the terms of the franchise under which said Jackson & Suburban Traction Company was operating the city lines within said city of Jackson, and that said franchise granted to the Jackson & Battle Creek Traction Company by the city of Jackson was an agreement, of which Exhibit 1 attached hereto and made a part hereof is a true copy. And respondent further alleges that the franchise under which said Jackson-Suburban Traction Company was operating in the city of Jackson at the time said Jackson & Battle Creek Traction Company began its operations was an agreement between Jackson-Suburban Traction Company and said city of Jackson, and that Exhibit 2 hereto attached and made a part hereof is a true copy of said agreement and franchise.

"Further answering, this respondent admits that the Michigan United Railways Company, the owner of said interurban street railway through relator's township, has succeeded to certain rights under Exhibit A and that respondent herein in operating said interurban street railway is bound by said Exhibit A in so far as said Exhibit A applies to the line of street railway owned and built by said Jackson & Battle Creek Traction Company, and that said Exhibit A is not controlling, and that respondent is not bound to operate over all the tracks within said city of Jackson as claimed by relator, but that said Exhibit 2 attached hereto controls the operations of respondent within said city of Jackson, and as to all the other allegations contained in said paragraph 4 this respondent denies the same."

Exhibit 2, referred to in the foregoing excerpt from respondent's answer and attached thereto, is a franchise from the city of Jackson to the Jackson-Suburban Traction Company, and defines the rights and obligations of the respondent's grantors as owners of a traction line within the city of Jackson. By section 28 it is provided that:

"Said grantee and its assigns shall make no greater charge than five cents for one continuous ride upon said railway from any point in the city to any other point in the city limits."

By the issue as originally framed it will be seen that the only point in question was whether the respondent company was obliged to carry passengers from the township of Sandstone to its interurban depot, a point in said city east of the intersection of First and Main streets, at the franchise rate, or whether, having reached that point within the city of Jackson, it was entitled to charge a 5-cent fare under the franchise from the city of Jackson which was dated November 19, 1900, and therefore antedated the franchise from the township of Sandstone to Foote. Later an amended petition was filed by relator, which, however, sought the same relief as the original petition. To the amended petition respondent filed an answer. In this answer it shows that on July 1, 1902, a representative of its grantor or of Mr. Foote, applied to the township board of the township of Sandstone for an extension of the Foote franchise, and that said extension was refused, as shown by the following entry in the township records:

"Mr. Warner, in behalf of the electric railroad company, asks for renewal of their franchise in this township. The motion to renew the franchise was voted down."

It further shows that on July 17, 1902, a notice of

forfeiture was served upon it in the following terms:

"To the Jackson & Albion Electric Railway Company, the Railway Companies General, Their Agents, Servants, Employees:

"You will please take notice that under the provisions of section 8 of the franchise granted by the township board of Sandstone on the 10th day of July, 1901, to William A. Foote, of the city of Jackson, and accepted by the said William A. Foote on the 18th day of July, 1901, we do hereby declare that all of the authority, powers, and privileges granted by said franchise have become forfeited and are hereby forfeited, for the reason that the construction of the railway provided in said franchise has not been completed within twelve months from the passage of said franchise in accordance with the true intent and meaning of section 11 of said franchise resolution. And you are therefore notified to wholly desist from and abandon the further construction or operation of said railroad. And you are further notified that in case you desire an extension of the time for the completion of the construction of said railroad in accordance with said resolution, that the same will be granted by the township board of Sandstone upon your agreeing as a condition thereof not to construct and install or put into operation the third rail system through the township of Sandstone, but to construct, install, and put into operation the usual overhead trolley system.

"Dated July 17, 1902."

In said amended answer respondent further asserts:

"Further answering, this respondent denies that the Michigan United Railways Company, the owner of said interurban street railway through relator's township, has succeeded to any right under Exhibit A (the Foote franchise), as said franchise was forfeited by the relator herein as shown by Exhibit 1, and respondent further denies that in operating said interurban street railway it is bound by said Exhibit A attached to relator's petition, and alleges the fact to be that Exhibit A is not controlling, and that respondent is not bound to operate over any of the street railway tracks, whether the same were formerly owned by the Jackson & Battle Creek Traction company or owned

by the Jackson & Suburban Traction Company within said city of Jackson as claimed by relator, and further alleges that, in so far as the lines of street railway formerly owned by the Jackson & Suburban Traction Company within said city of Jackson, that said Exhibit 2 attached hereto and made part hereof controls the operation of respondent within said city of Jackson, and as to all other allegations contained in said paragraph 4, this respondent denies the same.

"*Fifth.* Answering paragraph 5, this respondent admits that section 6 in Exhibit A set up in said paragraph is a correct copy of section 6 of said original franchise and agreement, but now forfeited, and respondent denies that section 6 is binding upon respondent in any way whatsoever, and even if said section 6 of Exhibit A were in effect, that said section 6 would not be controlling in any way whatsoever at any point within the city of Jackson beyond where First street intersects West Main street, being the terminus of said interurban street railway built by said Jackson & Battle Creek Traction Company within said city of Jackson, and as to the other allegations contained in said paragraph 5 this respondent denies the same; * * * and further answering, respondent alleges the fact to be that respondent is operating within said township of Sandstone under the terms of a franchise granted July 13, 1900, to Frederick N. Rowley, and accepted, a copy of which is attached hereto and made part hereof, and marked Exhibit 3."

The so-called Rowley franchise mentioned as Exhibit 3 in defendant's amended answer provides (section 6) as follows:

"The rates of fare for each passenger shall not exceed one and one-half cents per mile, except in case where the amount shall be less than five cents, when five cents may be charged and a fraction of a cent may be counted and charged as one cent. Children under five years of age shall be carried free of charge when accompanied by parent or guardian."

It will be noted that this provision as to the rate of fare is the same as that in the Foote franchise so far as the rate per mile is concerned, but that it is silent

as to the rate to be charged within the city of Jackson. By the amended answer another question is raised, namely, whether the so-called Foote franchise, under which relator claims was: (1) Terminated by its own terms; or (2) terminated by the notice served by the relator township.

Upon the hearing in the court below evidence was given on behalf of the relator tending to show that the notice of forfeiture was signed by the various members of the board at their several homes, and was not pursuant to any resolution adopted at a meeting of the township board, and that no such resolution appears of record in the proceedings of said board. It was conceded that Rowley was an associate of Foote, and it appears that at the time the application for the Foote franchise was made nothing had been done under the Rowley franchise, and it was understood upon all sides that the same had been abandoned. There was further testimony tending to show that before July 1, 1902, at which time an extension of the Foote franchise was requested and refused, the road had been partially constructed through the township of Sandstone. The notice of forfeiture above set forth likewise indicates this fact, as it recites:

"And you are therefore notified to wholly desist from and abandon the further construction or operation of said railroad."

Evidence was further introduced tending to show that the road through said township and into the city of Jackson was completed some time within the year 1903, and operation was immediately undertaken, and continued from that time down to the time when the respondent filed with the Michigan railway commission its amended schedule (effective May 3, 1915), which provided for rates of fare in excess of those

set out in the Foote franchise. Prior to that date the various operating companies had carried passengers through said township and into the city of Jackson to its interurban depot, located at a point east of the intersection of First street and West Main street at the rate of fare provided in the Foote franchise, to wit, 1½ cents per mile. This practice on the part of the various operating companies was uniform and continuous for a period of about 12 years, with one exception, when for a period of about 4 weeks the company then operating said line inaugurated what was known as the "zone" system of charges, under which the charges made to residents of the township of Sandstone were slightly in excess of those provided for in the Foote franchise. A protest having been made by the officers of the relator township to Mr. Bramlette, the general manager of the then operating company, the company abandoned its so-called "zone" system, and returned to its earlier rate of fare, and so far as relator township was concerned, continued to operate thereunder up to the time it filed the tariff which is the subject of this litigation. It is in testimony that at the time the company receded from its position touching the "zone" system of charges the original Foote franchise was submitted to Mr. Bramlette, the company's then general manager, and the claim was then made that the rates of fare provided by said Foote franchise controlled, and this claim was apparently conceded by the responsible officer of the company then operating.

Issues of fact were framed as follows:

"(1) Is the street railway in question commonly called the interurban railway now being operated by the Michigan Railway Company? If so, how long has it operated said street railway?

"(2) Has said Michigan Railway Company succeeded to all the rights and obligations of the Michigan United Traction Company?

"(3) Has the Michigan Railway Company by lease, assignment, or otherwise succeeded to all the rights and obligations of W. A. Foote under franchise granted to him on the 10th day of July, 1901, by the township of Sandstone?

"(4) Is said Michigan Railway Company now operating under said franchise?

"(5) Did the Michigan United Traction Company and its predecessors carry passengers generally going either way on its local interurban cars between all points within said township of Sandstone and the city of Jackson along the said interurban railway and up to or from its terminal or depot in said city of Jackson at a rate of fare not exceeding 1½ cents per mile for each passenger, except in cases where a minimum fare of 5 cents might be charged or fraction of a cent counted as a cent in accordance with section 6 of franchise dated July 10, 1901? If so, for how long a period?

"(6) Is said franchise still in force?

"(7) Have the respondents, Michigan United Traction Company and the Michigan Railway Company, commencing about the month of May, 1915, charged, requested and exacted a rate of fare either way along their local interurban line between points in the township of Sandstone and their waiting room or terminal on Francis street in the city of Jackson, Mich., exceeding 1½ cents per mile, allowance being made for minimum fares and fractions of a cent as provided in said section 6? If so, over what portion of their said line have they charged such excess?

"(8) Do the conductors, motormen, and other employees of respondent Michigan Railway Company having charge of its local interurban cars through the township of Sandstone as a general rule remain on and operate said cars up to and including the waiting room in the city of Jackson, situated on Francis street, and from the said waiting room in the city of Jackson through the township of Sandstone?

"(9) Did the Michigan United Traction Company or its predecessors exact or attempt to exact at any time a rate of fare in excess of a cent and one-half a mile between points in Sandstone and the city of Jackson up to and including the waiting room, except

where minimum fares were permissive, due allowance being made for a fraction of a cent?

"(10) Is the interurban street railway which is now being operated by the Michigan Railway Company between Jackson and Battle Creek located and operated upon any of the streets and highways of the township of Sandstone? If so, how long has it been so located and operated and upon what highway or highways?

"Approved for the journal."

The learned circuit judge who heard the case ordered the issuance of a mandamus in accordance with the prayer of the relator's petition, and made findings of fact answering the framed issues as follows:

"(1) The street railway in question is now being operated by the Michigan Railway Company, and it has been so operated since the 1st day of January, last.

"(2) As the operating company, the said Michigan Railway Company has succeeded to the rights and obligations of the Michigan United Traction Company.

"(3) I answer 'Yes.'

"(4) To this question my answer is 'Yes.'

"(5) My answer is 'Yes.'

"(6) My answer is 'Yes.'

"(7) My answer is 'Yes.'

"(8) To this question my answer is 'Yes.'

"(9) This interrogatory I answer 'No,' unless such increase of fares for the brief period heretofore stated and the change made on or about June 1, 1915, should be excepted.

"(10) My answer is 'Yes.' The highway upon which it has been so operated in part is the one known generally as the Territorial road. This becomes a street in that part of the village of Parma located in the township of Sandstone. Such railway has been so located and operated upon said highway and street ever since its construction.

"Dated May 31, 1916."

It is this order which respondent reviews by certiorari.

BROOKE, J. (*after stating the facts*). The first po-

sition taken by the appellant is that the provisions of the so-called Foote franchise are not now in force or binding upon the respondent:

"(*a*)  Because said franchise terminated by its self-executing provisions.

"(*b*)  Because formal notice was waived by the traction company's representative at the board meeting on July 1, 1902. The notice of forfeiture, Exhibit 1, as provided for in section 8 of the Foote franchise, was a ministerial act properly delegated to the township clerk and members of the board, and fully authorized by the original franchise resolution. No further formal action by the board was required for the purpose of declaring a forfeiture or authorizing the notice. Were such action necessary, it was furnished by the resolution of July 1, 1902."

(*a*) It seems to be well settled that a forfeiture clause which would be self-executing and would dispense with judicial proceedings or the intervention of the attorney general must be plain and unmistakable in its terms (*New York, etc., Bridge Co.* v. *Smith,* 148 N. Y. 540 [42 N. E. 1088]), and it has been held that, where franchises are granted by the legislature to construct a street railway within a certain time with a provision that, if the provisions of the act are not complied with, the franchise should be forfeited, the failure, without legal excuse, to lay the track within the time limited, does not work a forfeiture of the right to construct without a judgment at the suit of the State declaring the forfeiture (*Application of Brooklyn Elevated R. Co.,* 125 N. Y. 434 [26 N. E. 474] ; Booth on Street Railways [2d Ed.], § 46; *Union Street R. Co.* v. *Saginaw Circuit Judge,* 113 Mich. 694 [71 N. W. 1073]), and a municipality may not forfeit a grant where a company has constructed its road after the time prescribed by the ordinance has expired, where, as in the case under consideration, such construction is carried on without interference from

the municipality. It is particularly true that an effective forfeiture may not be extrajudicially declared where the railroad company has entered upon the construction of the road in good faith, relying upon the grant. *Knickerbocker Trust Co.* v. *City of Kalamazoo,* 182 Fed. 871; *Iron Mountain R. Co.* v. *City of Memphis,* 96 Fed. 123 (37 C. C. A. 410); *City of Detroit* v. *Plank Road Co.,* 43 Mich. 144 (5 N. W. 275).

(*b*) With reference to the service of the notice of forfeiture upon the person or company then holding the franchise and constructing the road thereunder, it clearly appears that, though the notice was signed by every officer of the municipality, it was not so signed at any regular or special meeting of the board, and no resolution of forfeiture was ever passed by the township board. Municipalities in the performance of legislative acts or acts involving discretion and judgment can so act only at authorized meetings duly held, and the members of said board cannot make a valid determination binding upon the municipality by their assents separately or individually expressed. 2 Dillon on Municipal Corporations (5th Ed.), § 501, and cases cited in notes 4 and 5.

It is next asserted on behalf of appellant that the rate of fare given to the respondent by the franchise from the city of Jackson to the Jackson & Suburban Traction Company is controlling as to the transportation of all passengers east of First street in the city of Jackson. In support of this claim it is pointed out on behalf of respondent that the respondent, which is the operating company under a lease from the Michigan United Railway Company, which is the assignee of the franchise granted by the city of Jackson to the Jackson Suburban Traction Company, operates its lines within the city of Jackson under the city of Jackson franchise which was granted a year or more before the so-called Foote franchise was granted through

the township of Sandstone. It is clear from the record that through some sort of a traffic arrangement made as early as 1903 the operating company transported its cars through the township of Sandstone and over the tracks of the Jackson Suburban Traction Company within the city of Jackson to its interurban station, this station being located some distance east of First street. Later, on July 25, 1908, the Michigan United Railways Company, through *mesne* conveyances, became possessed of the franchise rights of the Jackson Suburban Traction Company. Thereafter the various operating companies then being the owners of all the franchise rights both in the city of Jackson and the township of Sandstone for a period of more than seven years carried passengers through the township of Sandstone to the interurban station within the city of Jackson east of First street at the Foote franchise rate of 1½ cents per mile until 1915, when the new tariff was filed under which respondent asserted its right to exact a city fare from interurban passengers upon reaching the intersection of First and Main streets in the city of Jackson. The language of the Foote franchise is not obscure or ambiguous. It provides for a fare rate of 1½ cents per mile "from any point within said township of Sandstone to any point within the city of Jackson and from any point within said city of Jackson to any point within said township of Sandstone."

That Foote and his associates to whom said franchise was given constructed that particular road only to the intersection of First and Main streets, within the city of Jackson, it seems to us is of no particular significance. They evidently intended to make traffic arrangements with the urban lines of Jackson by means of which the interurban cars could reach the center of the city, and this they were able to do until they, or the various companies succeeding to their

rights, were able to acquire the entire system urban, as well as interurban. The construction given these contracts by the various operating and owning companies during a period of 12 years, while perhaps not absolutely controlling, is most pursuasive (*Rice* v. *Railway*, 122 Mich. 677 [81 N. W. 927, 48 L. R. A. 84]; *Township of Ross* v. *Railways Co.*, 165 Mich. 28 [130 N. W. 358]), inasmuch as it has not been observed that public service corporations habitually charge less than the tariff permitted by their franchise contracts. We conclude, then, that the road through the township of Sandstone was built under the Foote franchise, and was and is operated under it, and that section 6 of said franchise is binding upon the respondent in this case, and under the terms thereof respondent must carry passengers from any point within relator's township to its interurban depot within the city of Jackson at the franchise rate of 1½ cents per mile.

Finally it is asserted on behalf of respondent that to enforce the terms of the so-called Foote franchise would amount to a violation of the respondent's constitutional rights. If we are correct in our conclusions hereinbefore announced, this claim requires no discussion.

The judgment is affirmed.

KUHN, C. J., and STONE, OSTRANDER, BIRD, MOORE, STEERE, and FELLOWS, JJ., concurred.