CITY OF BAY CITY *v.* SAGINAW-BAY CITY RAILWAY CO.

1. CONSTITUTIONAL LAW—TITLE OF ACT—SUFFICIENCY.
   Act No, 514, Local Acts 1903, annexing the city of West Bay City to, and consolidating the same with, the city of Bay City, and providing that the rights, privileges, or franchises granted by the common council of Bay City should extend over the entire consolidated city, *held*, not unconstitutional because not within the object expressed in its title.

2. MUNICIPAL CORPORATIONS—FRANCHISE IN STREETS—EXTENDING CORPORATE LIMITS—EFFECT.
   Where a franchise is granted to use the streets of a munici-

pality, and thereafter the territorial limits of the munici-
pality are extended, the franchise immediately attaches
without any further action on the part of the municipality
to the newly acquired territory.

3. CONSTITUTIONAL LAW—EXTENDING CORPORATE LIMITS—IMPAIR-
MENT OF CONTRACT—EXPIRED FRANCHISE.
    Where a street railway company was operating in the cities
    of West Bay City and Bay City under separate franchises,
    expiring at different times, and the two cities were con-
    solidated by Act No. 514, Local Acts 1903, upon the ex-
    piration of its franchise in the former city, the provisions
    of the franchise of Bay City immediately went into effect
    in the annexed territory, as provided in said act, the
    effect not being to impair a contract within the inhibition
    of section 10, Art. 1, Constitution of the United States,
    since the West Bay City franchise had already expired.

Appeal from Bay; Wiest, J., presiding. Submitted
June 3, 1919. (Docket No. 8.) Decided October 6,
1919.

Bill by the city of Bay City against the Saginaw-
Bay City Railway Company to restrain the operation
of its street railway in certain territory. From a de-
cree dismissing the bill, plaintiff appeals. Affirmed.

*Robert H. Lane,* for plaintiff.

*James E. Duffy* (*Russell H. Neilson,* of counsel),
for defendant.

MOORE, J. This suit was commenced by plaintiff
filing a bill of complaint in chancery asking for an
injunction restraining defendant from operating its
street railway in the territory formerly West Bay City,
and claiming that, the franchise granted by West Bay
City having expired on October 10, 1917, the defend-
ant was operating its road upon the territory in ques-
tion without right.

Defendant maintained that both by operation of
law and by the express terms of section 220 of Act
No. 514, Local Acts of 1903, same being the consoli-

dation charter, the terms and provisions of the franchise granted by the city of Bay City on September 2, 1902, became effective and in force in the annexed territory formerly West Bay City, and that it was lawfully occupying the streets and operating its railway.

Plaintiff maintains that defendant's claims are untenable, and further that if section 220 of said Act No. 514 gives the rights claimed by defendant, the legislature in passing it intended by an express act to convey privileges, and in that respect the local act violated the Constitution and is void. Plaintiff also claims that if section 220 gives the rights claimed by defendant, the title of said Act No. 514 does not justify such grant and the act in that respect is void, as violating the Constitution. Plaintiff also claims that if the franchise does extend as claimed by defendant, that defendant must obtain the consent of the common council and three-fifths of the abutting property owners upon the streets where it operates before it could continue operation in the territory formerly West Bay City.

Defendant maintains that upon annexation of West Bay City to Bay City, and the consolidation of the government of the two cities, the franchise granted by the common council of the city of Bay City on September 2, 1902, attached to and reached all the municipal territory, both old and new, save that the rights under the franchise granted by the common council of the city of West Bay City were expressly preserved to defendant and continued in force.

The trial chancellor dismissed the bill of complaint. The case is brought here by appeal and the contentions of the plaintiff in this court are the same as in the court below.

The annexation and consolidation of the former cities of West Bay City and Bay City was completed under Act No. 514, Local Acts 1903. The title of said act is as follows:

"An act to annex the territory embraced within the city of West Bay City, to that of Bay City, and to consolidate the city of West Bay City with the city of Bay City, under the name of Bay City; to specify and fix the boundaries of the city; to consolidate the school system and the library systems of the said cities of West Bay City and Bay City; to provide for the assuming and payment of all the indebtedness and liabilities of the present cities of Bay City and West Bay City, and their school and library systems and to provide for the ownership of all their corporate property and rights; to define the corporate rights, powers and privileges of said city of Bay City and to repeal all acts and parts of acts inconsistent herewith."

Section 220 of said act reads as follows:

"SEC. 220. All ordinances, by-laws, regulations and rules of the common council of the cities of Bay City and West Bay City now in force, and not inconsistent with this act, shall remain in force, until amended or repealed by the common council under this act, within the respective territories for which they were originally adopted: *Provided*, That all rights, privileges or franchises heretofore granted to any person, persons or corporations shall be continued in force by this act, but the common council of Bay City shall have all the powers, rights and privileges relative thereto as are now vested in the respective councils of said cities of Bay City and West Bay City, and save as herein provided the rights, privileges or franchises granted by the common council of Bay City shall extend over the entire consolidated city."

Section 235 reads as follows:

"SEC. 235. Upon the consolidated city becoming organized by the election and qualification of the officers elected at the election to be held on the first Monday in April, nineteen hundred five, as hereinbefore provided, all former acts relating to the present cities of Bay City and West Bay City inconsistent with the provisions of this act, shall thereupon be superseded and repealed, except as otherwise expressly provided for by this act, but such repeal shall not affect any act or rights secured, created or established, or the title to any property acquired or any proceeding or

transaction, tax, assessment, contract or public improvement had or commenced prior to the time this act takes effect, but every such act, claim, right or proceeding shall remain as valid and effectual as if this act had not taken effect."

The dates, terms and expiration of the franchises are as follows:

"West Bay City franchise, granted for 30 years, October 10, 1887. Expired October 10, 1917. Bay City Consolidated Railway Co., granted for 30 years, July 24, 1893. Expires July 24, 1923. Bay City United Traction Co., granted for 30 years September 2, 1902. Expires September 2, 1932.

"The defendant, the Saginaw-Bay City Railway Company, is the owner and assignee of the above named franchises, and is now operating and conducting the street railway system in Bay City. There is no advantage or importance claimed by either parties to this litigation in or with the ordinance to the Bay City United Traction Company, September 2, 1902.

"The principal difference in the terms and conditions of the West Bay City franchise, and the Bay City United Traction Company franchise of September 2, 1902, is as follows:

"*First*—The time when each expires.

"*Second*—The 1902 franchise provides:

" 'Said grantee, its successors and assigns, shall petition the common council and obtain its consent, and the consent of three-fifths of the abutting owners of property on any street or part of street, before it shall erect any poles, string any wires or lay any track upon any such street in said city.' Section 1, Franchise of 1902, page 469, Charter of Bay City.

"The West Bay City franchise does not contain any provision whatever requiring defendant to petition and obtain the consent of the common council of Bay City and the consent of three-fifths of the abutting owners of property on any street before erecting poles, stringing wires or laying tracks, etc. ·

"*Third*—The 1902 ordinance provides:

" 'The said grantee, its successors and assigns, shall keep and maintain the street inside of the track and for an aggregate of two feet and four inches outside thereof in good order and

repair, and to keep the same clear from filth and dirt and snow.' * * * Section 6, Franchise 1902, page 472, Charter of Bay City.

"The West Bay City franchise does not contain any provision requiring defendant to pay any expense of pavement between the rails and for fourteen inches upon either side."

Is the title of Act No. 514, Local Acts 1903, broad enough to justify the grant for which defendant is contending? The trial judge thought it was and we agree with him. See *Westgate* v. *Township of Adrian*, 161 Mich. 333; *Attorney General* v. *Township of Springwells*, 143 Mich. 523, and the cases cited therein.

The important question in the case is, What was the effect upon the franchises when West Bay City became a part of Bay City? It is said:

"And where a franchise is granted to use the streets of a municipality, and thereafter the territorial limits of a municipality are extended, the franchise immediately attaches without any further action on the part of the municipality to the newly acquired territory." 4 McQuillan on Municipal Corporations, § 1674.

The question is not new in this State, *People* v. *Railway*, 162 Mich. 460, and *City of Detroit* v. *Railway*, 173 Mich. 314. It may be well to recall some of the language of Justice STEERE in the last named case:

"Counsel for relator broadly contend that the effect of any change in a municipal boundary is no longer an open question in this State, but that it was put to rest by the decision of this court in *People* v. *Railway*, 162 Mich. 460 (139 Am. St. Rep. 582). * * *

"This court, speaking through Chief Justice MONT-GOMERY, said:

" 'We think it not unreasonable to hold that this mutual contract was made in view of the power of the legislature of the State to increase or diminish the territory within the city, and that neither the city nor the company contemplated that in case of an extension of the lines of the company within the city, either by purchase or acquisition from another company, an increased fare should be demanded'—citing and reviewing *Town-*

*ship of West Bloomfield* v. *Railway,* 146 Mich. 198 (117 Am. St. Rep. 628), and *Indiana R. Co.* v. *Hoffman,* 161 Ind. 593 (69 N. E. 399).

"The opinion concluded as follows:

" 'We construe the ordinance to include any street railway constructed or purchased by the defendant which shall be within the city of Detroit as the limits of said city may from time to time be fixed by the legislature.'

"We think it can be said with certainty that, in a case where the question was pertinent and squarely presented in the briefs of counsel on both sides, argued and reargued, this court, in harmony with *Indiana R. Co.* v. *Hoffman, supra,* and the authorities there cited, now supported by the more recent case of *Peterson* v. *Power Co.,* 60 Wash. 406 (11 Pac. 338, 140 Am. St. Rep. 936), has unequivocally declared it a general rule in this State that city ordinances, designed for the city at large, operate throughout its boundaries, whatever changes may be made in them, and that grants by such ordinances, though accepted and amounting to contracts are to be construed as made and accepted in contemplation of, and subject to such rules, unless the contrary is clearly expressed. * * *

"It is unquestionably the law, as a general proposition, that in purchasing the Greenfield and Fairview lines respondent acquired all rights originally granted . by the franchises for such lines; and it is equally a general rule of law that those rights, once granted and accepted, could not be destroyed or abridged by subsequent general or local legislation. But it does not follow that respondent might not be in a position when those rights were purchased, by reason of other and previous contract obligations, so that as against certain parties and in certain localities all those rights could not be enjoyed or enforced by it. * * *

"That contract and previous contracts, embodied in ordinances to which it is supplemental, define respondent's right of existence in the city of Detroit. Its primary rights in the city territory are by city grant. It has united, built up, and developed as an entirety a street railway system within the city, extending to and beyond its limits. It has absorbed by purchase and made a part of that system the township lines in

question with their grants, and as a result of such unification and practical combination, even though in name and form it may retain the original corporate organization of the subsidiary companies, it has made them, as to the city and within the city, an integral part of the whole and subjected them to the restrictions contracted for in the original city ordinances, thus defining and limiting its own rights under the township grants, within city territory, as subordinate to and dominated by said city ordinances."

Counsel say these cases were overruled in *Detroit United Railway* v. *Michigan*, 242 U. S. 238 (37 Sup. Ct. Rep. 87). They contend the last-named case is controlling of the instant case and requires that a decree should be entered as prayed in the bill of complaint. Some language used in the opinion may be helpful.

It was said, speaking of the franchises involved:

"These several village and township grants were for terms that have not yet expired, and contain provisions for five-cent fares within the territory covered by them."

In speaking of the two cases appealed from this court which were heard as one:

"In each case plaintiff in error seasonably and expressly insisted that the several township and village grants above referred to were subsisting and valid contracts when the legislature of Michigan passed the acts extending the city limits, and that those acts, if so construed or applied as to affect or modify the contracts, were in conflict with section 10 of Article 1 of the Constitution of the United States. And it is upon the overruling of these contentions that the cases are brought here, under section 237, Jud. Code. * * *
"Coming then to the merits: Not only is it not disputed, but it is not open to serious dispute, that the original village and township grants were contractual in their nature. It appears that the recipients of those grants, like their successor, the plaintiff in error, became incorporated under the street railway act of 1867, of which section 13 provides that consent

for the construction and maintenance of a street railway is to be given by the corporate authorities in an ordinance to be enacted for the purpose, and under such rules, regulations and conditions as may be prescribed by such ordinance, but that no such railway shall be constructed until the company shall have accepted in writing the terms and conditions upon which they are permitted to use the streets. By section 14, after any city, village or township shall thus have consented to the construction and maintenance of street railways or granted rights and privileges to the company, and such consent and grant shall have been accepted by the company, the consent shall not be revoked or the company deprived of the rights and privileges conferred. And by section 20 the rates of toll or fare to be charged by the company are to be established by agreement between it and the corporate authorities, and are not to be increased without consent of such authorities. It is plain, as was pointed out by this court in *Detroit* v. *Railway Co.*, 184 U. S. 368, 385 (22 Sup. Ct. Rep. 410), that the legislature regarded the fixing of the rate of fare as a subject for agreement between the municipality and the company. And in these cases, as in that, the terms of the several ordinances are such as clearly to import a purpose to contract under the legislative authority thus conferred."

And the court held:

"Because of the provision of section 10 of article 1 of the Constitution of the United States, it was not within the power of the State of Michigan by any subsequent legislation to impair the obligations of those contracts, and since the judgments of the Supreme Court of that State gave such an effect to the annexation acts of 1905 and 1907, in conjunction with the ordinances of 1889, as to impair those obligations, the judgments must be reversed."

While the Federal court reversed this court in the two cases named it placed its decision upon the ground that the practical effect of the decisions was to impair the obligation of contracts. The opinion indicates that the court agrees with this court in holding that the

acquisition of the suburban lines was in effect an extension of the city railways. In the instant case, before the bill of complaint was filed the West Bay City franchise had expired. There was no claim that any of its provisions in the nature of a contract were annulled by the provisions of the Bay City franchise. The defendant concedes that under its present franchise it must comply with all of its provisions as indicated in a letter addressed to the common council reading in part as follows:

"In accordance with section No. 220 of the consolidation charter of 1905, the rights, terms and conditions of the franchise under which the Saginaw-Bay City Railway company is operating on the east side of the river will, after October 10, 1917, extend over the territory on the west side of the river and the company will then be operating its street car lines upon both sides of the river under the franchise granted to the company upon the east side of the river.

"The duties and obligations of the Saginaw-Bay City Railway Company, as expressed in these franchises, will, therefore, have to be performed by the company on both sides of the river in the same manner.

"After October 10, 1917, the company will be obliged to pay for the construction and maintenance of the pavement between its rails and for 14 inches outside of its rails, the same as has been done in the past on the east side of the river. All of the restriction and regulation in the franchise under which the company is now operating on the east side of the river, will have to be borne by the company on the west side of the river."

We do not deem it necessary to discuss the other questions raised by counsel, though we have considered them.

The decree is affirmed with costs to the defendant.

BIRD, C. J., and STEERE, BROOKE, FELLOWS, STONE, and KUHN, JJ., concurred.

The late Justice OSTRANDER took no part in this decision.